15-40009

## COMMONWEALTH OF MASSACHUSETTS

Worcester, ss.

12·22·14

A TRUE COPY ATTEST

DEPUTY SHERIFF

College Hill Properties LLC. et al. **Plaintiff (s)**

v.

City of Worcester. et al **Defendant (s)**

**Superior Court**
**Department of the Trial Court**
**of the Commonwealth**
**Civil Action**

No. WOCV 2014 -02176A

)
)
)
)
)   **SUMMONS**
)
)
)
)

✱  To the above-named Defendant: City of Worcester by and through Division of Housing and Health and Inspections.

You are hereby summoned and required to serve upon Eric Stafford at Jeffrey Denner Associates, PC, plaintiff's attorney, whose address is 4 Longfellow Place, 35th Floor, Boston, MA 02114 an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the SUPERIOR COURT Department of the Trial Court at WORCESTER either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counter-claim any claim which you may have against the plaintiff which arises out of the transaction of occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Worcester, the seventeenth day of December in the year of our Lord two thousand and 2014.

**Clerk**

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption.
   If a separate summons is used for each defendant, each should be addressed to that particular defendant.

PLEASE CIRCLE TYPE OF ACTION INVOLVED: TORT — MOTOR VEHICLE TORT — CONTRACT EQUITABLE RELIEF — CH. 93A — MEDICAL MALPRACTICE — OTHER.

✱  NOTICE TO DEFENDANT: You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein AND also file the original in the Clerk's Office, Superior Court, Room 1008.

| CIVIL ACTION COVER SHEET | | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT | DOCKET NO. _____ |
|---|---|---|---|
| | | COUNTY OF WORCESTER | |

| PLAINTIFF(S)College Hill Properties, LLC; Caro Street Properties, LLC; Clay Street Properties, LLC; Paul F. Giorgio and Diana H. Giorgio | DEFENDANT(S)THE CITY OF WORCESTER by and through the DEPARTMENT OF BUILDING AND ZONING, the DEPARTMENT OF 🔲 |
|---|---|

| Plaintiff Atty | Jeffrey A. Denner, Esq.; Eric Stafford, Esq. | | | | Type Defendant's Attorney Name | | | |
|---|---|---|---|---|---|---|---|---|
| Address | 4 Longfellow Place, 35th Floor | | | | Defendant Atty | | | |
| | | | | | Address | | | |
| City | Boston | State | MA | Zip Code 02114 | City | | State | Zip Code |
| Tel. | +1 (617) 227-2800 | BBO# | 120,520 | | | | | |

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| E03 Claims against Comm or Municipality - Average Track | | | ⦿ ] Yes ⧅ ] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

## TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses          $_____
  2. Total doctor expenses           $_____
  3. Total chiropractic expenses          $_____
  4. Total physical therapy expenses        $_____
  5. Total other expenses (describe)        $_____
                                    Subtotal $_____

B. Documented lost wages and compensation to date      $_____
C. Documented property damages to date           $_____
D. Reasonably anticipated future medical expenses     $_____
E. Reasonably anticipated lost wages and compensation to date   $_____
F. Other documented items of damages (describe)

                                                     $_____

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                             Total $_____

## CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

                                                    TOTAL   $..............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

    None

I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods.

Signature of Attorney of Record _____      Date: ~~November 2014~~ December 2 2014 (u)

A.O.S.C. 3-2007

## CIVIL ACTION COVER SHEET INSTRUCTIONS
### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**\* CONTRACTS**

| | |
|---|---|
| A01 Services, Labor and Materials | F) |
| A02 Goods Sold and Delivered | (F) |
| A03 Commercial Paper | (F) |
| A08 Sale or Lease of Real Estate | (F) |
| A12 Construction Dispute | (A) |
| A99 Other (Specify) | (F) |
| E03 Claims against Commonwealth or Municipality | (A) |

**\*TORT**

| | |
|---|---|
| B03 Motor Vehicle Negligence personal injury/property damage | (F) |
| B04 Other Negligence- personal injury/property damage | (F) |
| B05 Products Liability | (A) |
| B06 Malpractice-MedicaL | (A) |
| B07 Malpractice-Other (Specify) | (A) |
| B08 Wrongful Death, G.L. c.229, s.2A | (A) |
| B15 Defamation (Libel-Slander) | (A) |
| B19 Asbestos | (A) |
| B20 Personal Injury- slip & fall | (F) |
| B21 Environmental | (F) |
| B22 Employment Discrimination | (F) |
| B99 Other (Specify) | (F) |
| E03 Claims against Commonwealth | (A) |

**\* REAL PROPERTY**

| | | |
|---|---|---|
| C01 | Land Taking (eminent domain) | (F) |
| C02 | Zoning Appeal, G.L. c.40A | (F) |
| C03 | Dispute concerning title | (F) |
| C04 | Foreclosure of mortgage | (X) |
| C05 | Condominium Lien & Charges | (X) |
| C99 | Other (Specify) | (F) |
| E03 | Claims against Commonwealth or Municipality | (A) |

**EQUITABLE REMEDIES**

| | | |
|---|---|---|
| D01 | Specific Performance of Contract | (A) |
| D02 | Reach and Apply | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of a Trust | (A) |
| D08 | Minority Stockholder's Suit | (A) |
| D10 | Accounting | (A) |
| D12 | Dissolution of Partnership | (F) |
| D13 | Declaratory Judgment G.L. c. 231A | (A) |
| D99 | Other (Specify) | (F) |

**MISCELLANEOUS**

| | | |
|---|---|---|
| E02 | Appeal from Administrative Agency G.L. c. 30A | (X) |
| E03 | Claims against Commonwealth or Municipality | (A) |
| E05 | Confirmation of Arbitration Awards | (X) |
| E07 | G.L. c.112, s.12S (Mary Moe) | (X) |
| E08 | Appointment of Receiver | (X) |
| E09 | General Contractor bond, G.L. c. 149, ss. 29, 29a | (A) |
| E11 | Workers Compensation | (X) |
| E12 | G.L.c.123A, s.12 (SDP Commitment) | (X) |
| E14 | G.L. c. 123A, s. 9 (SDP Petition) | |
| E15 | Abuse Petition, G. L. c. 209A | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L. c.12, s. 11H | (A) |
| E18 | Foreign Discovery Proceeding | (X) |
| E19 | Sex Offender Registry G.L. c. 178M, s. 6 | (X) |
| E21 | Protection from Harassment c 258E | (X) |
| E25 | Plural Registry (Asbestos cases) | |
| E95 | \*\*Forfeiture G.L. c. 94C, s. 47 | (F) |
| E96 | Prisoner Cases | (F) |
| E97 | Prisoner Habeas Corpus | (X) |
| E99 | Other (Specify) | (X) |

\*Claims against the Commonwealth or a municipality are type E03, Average Track, cases.
\*\*Claims filed by the Commonwealth pursuant to G L c 94C, s 47 Forfeiture cases are type E95, Fast track.

TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | [ X ] Yes  [ ] |

### SUPERIOR COURT RULE 29

DUTY OF THE PLAINTIFF. The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shail transfer the action as provided in Rule 29(5)(C).

DUTY OF THE DEFENDANT. Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT.

FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
MAY RESULT IN DISMISSAL OF THIS ACTION.

## CIVIL ACTION COVER SHEET COLLEGE HILL PROPERTIES, LLC, ET AL CONTINUED:

### DEFENDANTS

THE CITY OF WORCESTER by and through the DEPARTMENT OF BUILDING AND ZONING, the DEPARTMENT OF HEALTH AND HOUSING INSPECTIONS, the DEPARTMENT OF INSPECTIONAL SERVICES, the BOARD OF PUBLIC HEALTH, WORCESTER POLICE DEPARTMENT the City Manager, MICHAEL V. O'BRIEN in his Official and individual capacities, City Councilor BARBARA HALLER in her Official and individual capacities, Commissioner of Building and Zoning, JOHN R. KELLY, in his Official and individual capacities, Director of Housing and Health Inspections AMANDA M. WILSON, in her Official and individual Capacities, Code Enforcement Officer and Housing and Health Inspector JOHN NORDBERG, in his Official and individual Capacities, Code Enforcement Officer and Housing and Health Inspector JOHN CARLSON, in his Official and individual capacities, Police Chief GARY GEMME, in his Official and individual capacities, Police Lieutenant JAMES SHUGRUE, in his Official and individual capacities.

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.                                   SUPERIOR COURT
                                                Civil Action No.

COLLEGE HILL PROPERTIES, LLC,
CARO STREET PROPERTIES, LLC,
CLAY STREET PROPERTIES, LLC,
PAUL F. GIORGIO, individually and
DIANA H. GIORGIO, individually

                Plaintiffs

v.

THE CITY OF WORCESTER by and through
the DEPARTMENT OF BUILDING AND ZONING,
the DEPARTMENT OF HEALTH AND HOUSING INSPECTIONS,
the DEPARTMENT OF INSPECTIONAL SERVICES,
the BOARD OF PUBLIC HEALTH, WORCESTER POLICE DEPARTMENT
the City Manager, MICHAEL V. O'BRIEN in his Official and individual capacities,
City Councilor BARBARA HALLER in her Official and individual capacities,
Commissioner of Building and Zoning JOHN R. KELLY,
in his Official and individual capacities,
Director of Housing and Health Inspections AMANDA M. WILSON,
in her Official and individual Capacities, Code Enforcement Officer and Housing and Health
Inspector JOHN NORDBERG, in his Official and individual Capacities,
Code Enforcement Officer and Housing and Health Inspector JOHN CARLSON,
in his Official and individual capacities, Police Chief GARY GEMME, in his
Official and individual capacities, Police Lieutenant
JAMES SHUGRUE, in his Official and individual capacities,

                Defendants

## VERIFIED COMPLAINT AND DEMAND FOR TRIAL BY JURY

### *Introduction*

This is an action by the plaintiffs against multiple defendants of the City of Worcester

seeking damages and declaratory relief on account of the Defendants' Violations of the plaintiffs'

civil rights by the selective enforcement of laws against them that the Supreme Judicial Court ruled

were not applicable. On or about May 15, 2013, the Supreme Judicial Court of the Commonwealth of

civil rights by the selective enforcement of laws against them that the Supreme Judicial Court ruled were not applicable. On or about May 15, 2013, the Supreme Judicial Court of the Commonwealth of Massachusetts decided the case of *City of Worcester Department Of Inspectional Services v. College Hill Properties, LLC*, 465 Mass. 134 in favor of College Hill Properties, LLC. The case involved the policy and procedure of the City of Worcester in bringing civil enforcement actions against the plaintiffs for operating a lodging house without a license when those landlords rented single apartment units to four or more unrelated adults, namely college students enrolled at Holy Cross College. The Court ruled that, "[t]he Lodging House Act, however, has no application in these circumstances. The apartments as occupied are not lodgings so as to render (the properties) lodging houses under G. L. c. 140 sec. 22, and the judgments enjoining the defendants from allowing four unrelated adults to occupy each of the apartments cannot stand."

## *The Parties*

1.  The plaintiff Paul F. Giorgio is a resident of Massachusetts who owns property in the City of Worcester through several limited liability companies, College Hill Properties, LLC Caro Street Properties, LLC and Clay Street Properties, LLC.

2.  The plaintiff Diana H. Giorgio is a resident of Massachusetts who owns, with her husband Paul, property in the City of Worcester through several limited liability companies, College Hill Properties, LLC Caro Street Properties, LLC and Clay Street Properties, LLC.

3.  The Plaintiff, College Hill Properties, LLC is a limited liability company duly created under the laws of the Commonwealth of Massachusetts in 2004 with a principal office at Centre Street, Nantucket Massachusetts. It holds title to properties in the City of Worcester at the following addresses: 1 Boyden Street, 3 Boyden Street, 11 Boyden Street and 29 Caro Street.

4. The Plaintiff, Caro Street Properties, LLC is a limited liability company duly created under the laws of the Commonwealth of Massachusetts in 2004 with a principal office at Centre Street, Nantucket Massachusetts. It holds title to properties in the City of Worcester at the following addresses: 33 Caro Street, 37 Caro Street and 38 Caro Street.

5. The Plaintiff, Clay Street Properties, LLC is a limited liability company duly created under the laws of the Commonwealth of Massachusetts in 2006 with a principal office at Centre Street, Nantucket Massachusetts. It holds title to properties in the City of Worcester at the following address: 10 Boyden Street, 13 Boyden Street, 7 Clay Street and 12 Clay Street.

6. The defendant City of Worcester is a municipality within the Commonwealth of Massachusetts with a principal office at 455 Main Street, Worcester, MA 01608. The City has a variety of municipal offices through which it conducts its affairs including the:

   1. Division of Building and Zoning

   2. Division of Housing and Health and Inspections

   3. Department of Inspectional Services and,

   4. Board of Public Health.

7. The divisions and boards cited in ¶ 6 above have their principal offices at 25 Meade Street, Worcester, MA 01610.

8. The City Manager of Worcester has a principal office at Room 309, City Hall, 455 Main Street, Worcester, MA 01608 and is responsible for the proper administration and supervision of all city affairs. At all times relevant to the allegations of the Complaint,

3

the City Manager was Michael V. O'Brien. He resides at 43 Hickory Drive, Worcester, MA. 01609.

9. The City of Worcester Police Department has principal offices at 9-11 Lincoln Square, Worcester, MA 01608. At all times relevant to the allegations of the Complaint, the defendant Chief of Police was Gary Gemme who resides at 23 Benedict Road, Apt. 1, Worcester, MA 01604.

10. The defendant Barbara Haller is an individual who resides at 74 Sturbridge Road, Holland, MA 01521. At all times relevant to the allegations of the Complaint, she was a City Councilor in Worcester, MA.

11. The defendant John R. Kelly is an individual who resides at 2 Stonybrook Lane, Shrewsbury, MA 01545 who at all times relevant to the allegations of the Complaint was the Commissioner of Building and Zoning in the City of Worcester.

12. The defendant Amanda Wilson is an individual who resides at 77 Darnell Road, Worcester, MA and who, at all times relevant to the allegations of the Complaint, was the Director of Housing and Health Inspections.

13. The defendant John Nordberg is an individual who resides at 2 Housatonic Street, Worcester, MA who, at all times relevant to the allegations of the Complaint, was a Code Enforcement Officer and Housing and Health Inspector.

14. The defendant John Carlson is an individual who resides at 7 Sachem Avenue, Worcester, MA 01606 who, at all times relevant to the allegations of the Complaint, was a Code Enforcement Officer and Housing and Health Inspector.

15. The defendant James Shugrue is an individual who resides at 29 Bjorklund Avenue, Unit 1605, Worcester, MA who, at all times relevant to the allegations of the Complaint, was a Lieutenant in the Worcester Police Department.

16. All of the individual defendants named in paragraphs 8-15 above are sued in their official and individual capacities.

17. The Plaintiffs' Complaint alleges acts, omissions, conduct, policies and procedures which under color of Massachusetts law violated the plaintiffs' Federal and State Constitutional Rights, individually and collectively, under 42 U.S.C. sec. 1983, 18 U.S.C 1964, Article 1, Section 10 of the United States Constitution and the rights to Equal Protection, Due Process and Property Rights under the Fourteenth Amendment to the United States Constitution, the Massachusetts Civil Rights Act and the Constitution of the Commonwealth of Massachusetts all of which damaged the plaintiffs.

## *Statement of Facts*

18. Beginning in 2002, Caro Street Properties, LLC, Clay Street Properties, LLC and College Hill Properties, LLC bought residential dwelling units in Worcester that were leased to students from the College of the Holy Cross living off campus. Each tenant executed a lease for the respective unit. At all times material hereto, the student tenants provided Holy Cross with information about their respective tenancies including where and with whom they shared the leased unit. From 2002-2009 the City of Worcester was provided information by Holy Cross regarding which students were living in each respective unit and the City was fully aware which units owned by the plaintiffs were leased to four Holy Cross students at all times material hereto.

19. On numerous occasions from 2002-2009, renovations were performed on existing properties owned by the plaintiffs for which building permits were obtained by the plaintiffs and the City performed follow up inspections of the renovations made to the four bedroom units. The plaintiffs made no attempt to conceal that four students were

5

living in the units and the City was aware the units contained four tenants. At no time did the City fail any unit for more than three tenants nor did the City cite the plaintiffs for violation of the Ordinance purporting to limit occupancy to less than four unrelated tenants or for violation of the Lodging House Act.

20. College Hill Properties, LLC, Caro Street Properties, LLC and Clay Street Properties, LLC, during all times relevant hereto, owned two and three family houses in Worcester. Specifically, College Hill Properties, LLC owned 3 three bedroom, one bathroom units, 3 four bedroom, one bathroom units; Clay Street Properties, LLC owned 4 four bedroom, two bathroom units and 8 four bedroom, three bathroom units and Caro Street Properties, LLC owned 9 three bedroom, one bathroom units.

21. Each unit, whether owned by Caro Street. LLC, Clay Street Properties, LLC or College Hill Properties, LLC, consisted of separate apartment units each of which had a kitchen, living room and at least one bathroom. Each was leased to four currently enrolled students at the College of The Holy Cross for a twelve-month period. Each tenant in each separately leased unit had full access to the common areas of the unit and common areas of the building.

22. Pursuant to the Lodging House Act (G. L. c. 140, § 22 *et seq)*, one who operates a lodging house must obtain a license, is subject to a fine or imprisonment if they knowingly allow immoral solicitation, bargaining or conduct, and, licensed lodging houses under section 25, are "subject to inspection by licensing authorities and their authorized agents, and by police on request from the licensing authorities."

23. The Lodging House Act was originally passed in 1918, and the legislative history reveals that it was based, at least in part, on the State Department of Health's campaign, as part of the [WWI] war effort, to combat venereal disease, and was enacted "out of concern that the masses of young and unmarried people powering

Boston's economy, many from the country or overseas and without family connections,

were leading lonely, antisocial, sexually loose, or otherwise unhealthy lives."

Newbury Jr. College v. Brookline, 19 Mass. App. Ct. 197, 203-204 (1985).
Sang Vo v. City of Boston, U.S. Dist. Ct. No. 00-CV-11733-RWZ, slip op.,
21-22 (D. Mass. September 22, 2003).

24. In 2007, Paul F. Giorgio submitted plans to the City of Worcester that had been

approved by the Commonwealth, for construction of a new 2 unit dwelling at 7 Clay

Street that clearly demonstrated and set out that each unit contained four bedrooms. The

City of Worcester approved said plans and issued a building permit based on the plans

to allow construction of a new 2 unit dwelling at 7 Clay Street, as evidenced by the

official stamp of the City of Worcester and signature of Building Inspector Joseph

Sansoucy appearing thereon. After construction was complete, on March 7, 2007 the

City issued a Certificate of Occupancy for a two unit dwelling without any Special

Conditions or restrictions imposed relating to the number of unrelated people allowed

to live in each unit.

25. In 2007, Paul F. Giorgio submitted plans to the City of Worcester that had been

approved by the Commonwealth, for construction of a new 2 unit dwelling at 13

Boyden Street that clearly demonstrated and set out that each unit contained four

bedrooms. The City of Worcester approved said plans and issued a building permit

based on the plans to allow construction of a new 2 unit dwelling at 13 Boyden Street,

as evidenced by the official stamp of the City of Worcester and signature of Building

Inspector Joseph Sansoucy appearing thereon. After construction was complete, on

November 19, 2007 the City issued a Certificate of Occupancy for a two unit dwelling

without any Special Condition or restrictions imposed relating to the number of

unrelated people allowed to live in each unit.

26. In 2007, Paul F. Giorgio submitted plans to the City of Worcester that had been
    approved by the Commonwealth, for construction of a new 2 unit dwelling at 12 Clay
    Street that clearly demonstrated and set out that each unit contained four bedrooms. The
    City of Worcester approved said plans and issued a building permit based on the plans
    to allow construction of a new 2 unit dwelling at 12 Clay Street, as evidenced by the
    official stamp of the City of Worcester and signature of Building Inspector Joseph
    Sansoucy thereon. After construction was complete, on May 28, 2008 the City issued a
    Certificate of Occupancy for a two unit dwelling without any Special Conditions or
    restrictions imposed relating to the number of unrelated tenants allowed to live in each
    unit.

27. In 2009, Paul F. Giorgio submitted plans to the City of Worcester that had been
    approved by the Commonwealth, for construction of a new 6 unit dwelling at 10
    Boyden Street that clearly demonstrated and set out that each unit contained four
    bedrooms. The City of Worcester approved said plans and issued a building permit
    based on the plans to allow construction of a new 6 unit dwelling at 10 Boyden Street,
    as evidenced by the official stamp of the City of Worcester and signature of Building
    Inspector Joseph Sansoucy thereon. At no time during construction or inspection did
    the City object to, mention or fail the units for having four bedrooms. After
    construction was complete, the City issued a Certificate of Occupancy with Special
    Conditions that no more than 3 unrelated persons were to occupy any unit. The Special
    Conditions were not part of the approval process, the permitting process nor were the
    approved plans ever modified from four bedrooms to three bedrooms and a den.

28. On or about September 3, 2009, Paul F. Giorgio was served with a cease and desist
    administrative notice from the Department of Inspectional Services of the City of
    Worcester, by its Commissioner John Kelly and Inspector John Nordberg, alleging that

8

10 Boyden Street, Unit 2 was in violation of the Worcester Zoning Ordinance which purportedly prohibited renting or leasing to more than three (3) unrelated adult occupants.

29. On or about September 14, 2009, Paul and Michele Meaney were served with a cease and desist administrative notice from the Department of Inspectional Services of the City of Worcester, by its Commissioner John Kelly and Inspector John Nordberg, alleging that 21 Caro Street was in violation of the Worcester Zoning Ordinance which purportedly prohibited renting or leasing to more than three (3) unrelated adult occupants.

30. On or about November 17, 2009, the City of Worcester rescinded the cease and desist order issued to the Meaneys relating to 21 Caro Street, representing that the City would pursue any action under State Law rather than the Worcester Zoning Ordinance.

31. The City took no such act of rescinding the cease and desist administrative notice served on Giorgio, thus subjecting Giorgio to disparate and selective enforcement of the Worcester Zoning Ordinance. This supports Giorgio's belief that the City of Worcester had no good faith belief that the Zoning Ordinance was constitutional or enforceable.

32. Before the City of Worcester served Giorgio with the cease and desist administrative order, it was aware of the decision in the Sang Vo v. City of Boston case and the Consent Order in which the City of Boston agreed that four (4) unrelated individual living within a single unit did not require a Lodging House license as it constituted a dwelling unit and not a lodging house.

33. Before the City of Worcester served Giorgio with the cease and desist administrative order, the City of Boston, after litigation over the issue of maximum unrelated tenants allowed in single units had concluded in the United States District Court for the District

9

of Massachusetts and Judge Rya Zobel had determined the Lodging House Act did not

apply to rented or leased apartment units, issued materials in which the City of Boston

stated:

A Rooming/Lodging House is defined as:

A dwelling or dwelling unit offering accommodations to four or more unrelated persons each of whom has a separate leasing agreement with the owner and each of whom does not have access to the entire dwelling unit.

Four or more unrelated occupants living together as a single housekeeping unit is not considered a rooming or lodging house.

Before the City of Worcester served Giorgio served cease and desist administrative

Orders, it was aware of the City of Boston's efforts to disseminate materials that

concluded that four unrelated occupants living together as a single housekeeping unit

did not violate the Lodging House Act.

34. At an October 19, 2009 meeting of the Zoning Board of Appeals of the City of

Worcester, City Inspector John Nordberg testified falsely that Paul Giorgio "was called

last fall and informed that some of his properties were in violation of the Zoning

Ordinance regarding lodging houses" in order to create the impression that Giorgio had

been made aware of the City's allegation of non-compliance in an effort to make the

City's selective enforcement appear reasonable and justifiable. Nordberg further

testified falsely that Giorgio had "moved students around" in 2008 to conceal the

accurate number of tenants during Nordberg's inspection , an allegation which is

demonstrably false as Nordberg conducted no such inspection in 2008 and, therefore,

found no such evidence of Giorgio's alleged moving of students nor was any such

action ever taken by Giorgio, or by any person under his direction or under the

10

direction of any of the plaintiffs. In addition, John Nordberg testified he had instructed the Worcester Police, under color of law, to gain unlawful entry into rental units owned by the plaintiffs to conduct investigations and obtain evidence to use in civil enforcement actions the City of Worcester intended to pursue against Paul F. Giorgio.

35. At the same October 19, 2009 meeting of the Zoning Board of Appeals of The City of Worcester, the Commissioner of Building and Zoning for the City of Worcester, John R. Kelly, also testified falsely that the plans for 10-12 Boyden Street originally showed four (4) bedrooms but were modified to three (3) bedrooms and a den. The plaintiff, Paul F. Giorgio, has in his possession the original permit plans for 10 Boyden Street with the approval signature dated July 2, 2009 of Joseph Sansoucy bearing the official stamp of the City of Worcester which clearly show that a four (4) bedroom structure was approved, not a modified three (3) bedroom and a den as Kelly had falsely stated. Between July 2, 2009 and when the City of Worcester initiated enforcement actions, the structure was inspected by the City on numerous occasions without complaint and never requested that Giorgio modify the submitted and approved plans from four bedrooms to three bedrooms and a den.

36. On November 18, 2009, the plaintiffs were served with citations from the City of Worcester for operating unlicensed lodging houses and ordered to cease and desist from operating lodging houses without a license within 48 hours of receipt.

37. On January 13, 2010, the City of Worcester filed civil actions in the Worcester Housing Court against plaintiffs Paul F Giorgio, Diana H. Giorgio and College Hill Properties. LLC; a Massachusetts limited company in which Paul H. Giorgio was the manager and Diana H. Giorgio a member. In January 2010, the City sought injunctive relief to enforce its administrative orders and also to restrain these plaintiffs from renting or leasing to more than three unrelated tenants in any single unit as the City now

11

considered such an occupancy arrangement to constitute the operation of unlicensed
lodging houses.

38. The City of Worcester's enforcement actions filed on January 13, 2010 did not make
any complaint of, nor reference to, any purported violations of the Sanitary Code or
Building Code nor did they allege the plaintiffs in this action were in violation of any
Zoning Ordinance. They did not allege any immoral solicitation, bargaining or conduct
on the premises.

39. Immediately proceeding the filing of the enforcement actions, the City of Worcester, by
and through its Department of Inspectional Services, acting under color of law,
conducted warrantless and unlawful searches of 11 and 13 Boyden Street for the
purpose of illegally attempting to obtain evidence of the operation of "unlicensed
lodging houses", as it was now defining the term, for the purposes of selectively
enforcing it against Giorgio.

40. Prior to the illegal searches and enforcement actions, the plaintiffs submitted plans to
the City regarding new construction of a dwelling at 13 Boyden Street, which included
11 Boyden Street, that were approved by the Commonwealth and clearly set out that
each unit contained four bedrooms and were approved. At no time prior to its cease and
desist letters to the plaintiffs on September 3, 2009 did the City notify the plaintiffs of
any alleged non-compliance with any Ordinance or Statute nor did it seek to reduce the
number of tenants in any of the properties owned by the plaintiffs.

41. From October 2009 until the evidentiary hearing held on February 1, 2010, officials,
agents and employees of the City of Worcester made numerous unlawful, pre-textual
and unconstitutional entries and searches of plaintiffs' properties, under color of law,
using force, intimidation, falsehoods, misrepresentation and deliberately false

12

statements of authority to gain entry and unlawfully search for information to support the anticipated or actual actions brought by the City of Worcester against the plaintiffs.

42. The tactics described in paragraph 45, included (1) fabricating "noise complaints" by neighbors, (2) uniformed Worcester Police Officers pushing their way into leased premises when a college age tenant opened the apartment door in response to loud knocking on the door and shouts of "Police, open this door! Police!" and (3) ignoring tenant requests to view any warrant. The Department of Inspectional Services repeatedly gained warrantless entries by asserting it had the right to inspect lodging houses, as it was now applying its definition of lodging house, at any time pursuant to G.L. c. 140 sec. 25. These warrantless entries were perpetuated to circumvent the law and tactically and systematically employed, under color of law, to unlawfully obtain evidence for the purpose of targeting the plaintiffs for harassment, intimidation and disparate enforcement actions by contrived and selective interpretation of law for illegitimate and prohibited reasons unrelated to the health and safety of tenants.

43. These tactics, as set forth in paragraphs 45 and 46, were implemented and employed at the direction of Worcester City Manager Michael V. O'Brien as part of a scheme to target and harass a select few landlords it considered easy targets such as "bad actors like Giorgio" to use as pawns in its plan to coerce tax exempt entities to make "voluntary" payments to the City of Worcester in lieu of property taxes.

44. The Department of Inspectional Services repeatedly executed warrantless entry into premises leased to students by College Hill Properties, LLC, Caro Street Properties, LLC and Clay Street Properties, LLC. John Nordberg and John Carlson performed these warrantless and unlawful searches on the targets of selective enforcement, under color of law, as City of Worcester Code Enforcement Officers and Housing and Health Inspectors at the express direction of Worcester City Manager Michael V. O'Brien,

13

Commissioner of Building and Zoning John R. Kelly, City Councilor Barbara Haller and Director of Housing and Health Inspections Amanda M. Wilson for illegitimate purpose and in furtherance of its unlawfully motivated and implemented agenda.

45. In excess of 40 inspections were performed, under color of law, by John Kelly and Joseph Sansoucy in a 60-75 day period in furtherance of the City of Worcester's plan. For most of these wrongful inspections, City Councilor Barbara Haller was present and personally observed the inspections from her automobile in an attempt to intimidate the plaintiffs as Haller had previously informed Paul F. Giorgio, who's rental units were in Haller's City Council District, that she would use all of her political influence to create so many problems for Giorgio that her actions would put him out of business. Michael V. O'Brien confirmed Haller's personal animus for Giorgio was a motivating component of the scheme of selective enforcement against Paul F. Giorgio in a meeting at which Massachusetts State Representative Binienda was present.

46. In the rare instance that landlords other than the plaintiffs, such as Hampton Properties, received administrative orders from the City of Worcester for renting apartments to more than three unrelated persons such as at 913 and 919 Main Street, Worcester, MA, Worcester City Manager Michael V. O'Brien intervened to ensure that no further enforcement action was taken and that Hampton Properties did not lose tenants or revenue as a result of any enforcement action. This was done, as stated by O'Brien, because the law was only to be applied against people "like Giorgio." By this admission, Michael V. O'Brien's confirmed that the City of Worcester had a policy of selectively enforcing the Lodging House Act against handpicked parties but not against all it was aware were renting or leasing to more than three unrelated persons in apartment units.

47. In particular, Kensington Management, Blake Rubin and Hampton Properties received cease and desist administrative orders from the City of Worcester for alleged violation of the Lodging House Act, and on each such occasion no action was taken by Nordberg and/or Carlson to advance or enforce the administrative orders and Kensington Management, Blake Rubin and Hampton Properties took no action that remedied the alleged noncompliance nor did any reduce the number of tenants in their units to less than four. In its selective enforcement of the law, the City did not compel those landlords to comply with the orders nor evict any tenants, as the City did in matters involving the plaintiffs. In other similar situations, including those of landlord Michael Higgins, who is a Worcester Police Officer, and Michael Bartsiewicz, both known by the City to be renting or leasing to more than three unrelated tenants, the City of Worcester has taken no action against them of any kind to enforce the law.

48. In a meeting with Worcester City Manager Michael V. O'Brien, also attended by Massachusetts State Representative John Binienda, Paul F. Giorgio was informed by O'Brien that City Councilor Barbara Haller was personally targeting him for harassment and that the City's purported enforcement actions against him were being conducted, in part, to placate her and also to advance the attempt to obtain voluntary contributions in lieu of taxes from tax exempt entities.

49. At the same meeting, Worcester City Manager Michael V. O'Brien informed Giorgio that he was "in the cross-fire" of a dispute between the City of Worcester and the College of the Holy Cross because of the City's demand that Holy Cross, which was statutorily exempt from paying property taxes, make voluntary payments of $1,000,000.00 per year in lieu of property taxes to the City of Worcester, like other Worcester resident colleges were doing. If Holy Cross did so, according to O'Brien, all enforcement actions against Giorgio and his companies College Hill Properties, LLC,

15

Caro Street Properties, LLC and Clay Street Properties, LLC would immediately cease. When specifically asked by Giorgio "if all of this would go away if Holy Cross wrote the check," O'Brien assured Giorgio that it would.

50. At the City of Worcester's insistence, the College of the Holy Cross provided the City with the names and addresses of all students living in properties owned by the plaintiffs without their consent and deliberately misinformed parents of Holy Cross students that Giorgio or his properties were banned or under investigation. The effect of this was to make it improbable if not impossible for plaintiffs to rent the apartment units to Holy Cross students. Plaintiff Paul F. Giorgio witnessed City of Worcester Code Enforcement Officer John Nordberg in possession of the list of students provided on several occasions during which Nordberg was "inspecting" properties owned by the plaintiffs.

51. At the City of Worcester's insistence that the apartment buildings were lodging houses, the plaintiffs in 2010 attempted to comply with contempt orders by evicting one tenant from each apartment and by applying for licenses to operate Lodging Houses. The applications for licenses to operate Lodging Houses were denied by the City of Worcester.

52. By compelling Paul F. Giorgio and the other plaintiffs to either evict lawful tenants with property rights granted by lease or obtain a lodging houses licenses for the properties, the City of Worcester acted in an arbitrary and capricious manner and in excess of statutory authority thereby depriving Giorgio of his properties rights under the United States Constitution and Massachusetts General laws c. 12 sections 11H and 11I.

53. The City of Worcester's actions in compelling Paul F. Giorgio to either evict lawful tenants with property rights granted by lease or obtain lodging house licenses on the

16

basis of kinship is arbitrary and capricious manner and in excess of statutory authority thereby depriving Giorgio of his properties rights under the United States Constitution and Massachusetts General Laws c. 12 sections 11H and 11I.

54. The City of Worcester's actions in conducting warrantless searches of property owned by the plaintiffs and in attempting to collect evidence by coercive and unlawful means violates the plaintiffs rights as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. Section 1983, Massachusetts General laws c. 12 Sections 11I and Articles 1, 10 and 12 of the Declaration of Rights of the Massachusetts Constitution.

55. The City of Worcester's actions in compelling Paul F. Giorgio to either evict lawful tenants or obtain lodging house licenses were not imposed upon Kensington Management, Blake Rubin, Hampton Properties, Michael Higgins, Michael Bartsiewicz and numerous others renting or leasing to more than three unrelated persons was, therefore, selective and discriminatory in that it punished those without the political influence possessed by those who received preferential treatment by the City of Worcester.

56. In June 2011, Paul F. Giorgio applied for a building permit to install a replacement rear porch staircase at 38 Caro Street. The City of Worcester failed and refused to grant the permit during the period required by statute despite its prior expressions of strict policy enforcement relating to safety issues of the student tenants in the rental units owned by the plaintiffs and putting him at risk of violating building and safety codes.

57. In a further effort to intimidate and threaten the plaintiffs, the City of Worcester cited Paul F. Giorgio with aiding and abetting prostitution, in violation of the Lodging House Act, for failing to "control" the action and behaviors of the tenants. This was a completely unwarranted and frivolous action by the City intended to malign the

17

plaintiff Giorgio. The false charges dismissed but subjected Giorgio to Court appearances, legal fees and public embarrassment.

58. In 2012, Police Lieutenant James Shugrue informed Paul F. Giorgio that the Worcester Police Department had filed complaints against him allegedly because of neighbors' complaints of trash at the plaintiffs' properties. This was false as the only neighbors to the subject property were the plaintiffs. The City caused Worcester Police Detail Officers to make weekly reports to City of Worcester Health Inspectors to further harass and bring civil enforcement actions against the plaintiffs. In the same time frame, Lieutenant James Shugrue directed other Worcester police officers to continue to make weekly warrantless entries into the leased premises owned by the plaintiffs to search for the current number of occupants in each apartment unit.

59. In a continuing effort to harass and annoy the plaintiffs, City of Worcester Housing Inspector John Carlson came to properties owned by College Hill Properties, LLC, Clay Street Properties, LLC and Caro Street Properties, LLC on ten separate occasions to cite the plaintiff Paul F. Giorgio for failing to remove a single empty spool of toiler paper from the exterior. The inspections were done on 9/24/12, 9/25/12, 10/1/12, 10/2/12, 10/5/12, 10/15/12, 10/16/12, 11/19/12, 11/30/12 and 12/4/12.

60. The actions taken by the City of Worcester as aforesaid were taken not in furtherance of any legitimate and/or lawful governmental function but were unjustly and unlawfully undertaken to selectively enforce the inapplicable lodging house statute and harass him by bringing other unwarranted charges against Paul F. Giorgio and companies duly organized and registered with the Secretary of the Commonwealth in which Giorgio held a financial interest.

## *CAUSES OF ACTION*

18

## COUNT I

### DENIAL OF EQUAL PROTECTION IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C., SECTION 1983 AS AGAINST ALL DEFENDANTS

61. The plaintiffs restate paragraphs 1-63 as if set forth in full here.

62. The City of Worcester and other defendants' enforcement actions, acting under color

of law, against the plaintiffs constitute a regulatory "taking" without just compensation

in violation of the Fifth Amendment to the United States Constitution and of 42 U.S.C.

section 1983 thus injuring and damaging the plaintiffs.

63. The City of Worcester's regulatory scheme to deprive the plaintiffs of a legitimate

property right without just compensation or affording the plaintiffs an adequate post

deprivation remedy is a violation of the Fifth Amendment and Fourteenth Amendment

to the United States Constitution and 42 U.S.C. section 1983.

WHEREFORE, the plaintiffs demand judgment and statutory damages pursuant to 42 U.S.C.

Section 1983 including interest, costs and reasonable attorney's fees.

## COUNT II

### DENIAL OF SUBSTANTIVE DUE PROCESS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND 42 U.S.C., SECTION 1983 AS AGAINST ALL DEFENDANTS

64. The plaintiffs restate paragraphs 1-66 as if herein set forth.

65. The City of Worcester and other defendants' actions, acting under color of law, against

the plaintiffs were arbitrary and capricious and deprived the plaintiffs of a legitimate

property right and knowingly injured and damaged the plaintiffs.

66. Said actions by the City of Worcester were motivated by individual discriminatory

intent and/or political motivation and without regard to any legitimate governmental

function or policy.

19

WHEREFORE, the plaintiffs demand judgment and statutory damages pursuant to 42 U.S.C. Section 1983 including interest, costs and reasonable attorney's fees.

## *COUNT III*

### *DENIAL OF EQUAL PROTECTION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AS AGAINST ALL DEFENDANTS*

67. The plaintiffs restate paragraphs 1-69 as if set forth in full.

68. The City of Worcester's actions and policies, as aforesaid, and other defendants' implementation and carrying out said policies, acting under color of law, violated the plaintiffs' rights to Equal Protection. These unwarranted and malicious actions and policies were selectively employed and enforced against the plaintiffs compared to others similarly situated. The selective enforcement against the plaintiffs arose from personal animus and/or an illegitimate purposes, including, among others, political favoritism, punishing the plaintiffs for asserting rights protected by the First and Fifth Amendments to the United States Constitution and coercing the College of the Holy Cross to make voluntary payments to the City of Worcester in lieu of property tax payments to which it was statutorily exempt by interfering and disrupting the plaintiffs' renting or leasing off campus apartments to Holy Cross students.

69. In addition, the City of Worcester attempted through its policies and actions, under color of law, to intimidate threaten and coerce the plaintiffs and intentionally treat the plaintiffs differently than other landlords under identical circumstances without any rational basis for the disparate treatment and enforcement thus damaging the plaintiffs.

70. Said actions and policies of the City of Worcester, acting under color of law, were undertaken with malice and bad faith intent to injure the plaintiffs and cause financial damage and which did injure and damage said plaintiffs in violation of their rights

under the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution.

WHEREFORE, the plaintiffs demand judgment and damages in an amount to be proven at

trial together with interest, costs and reasonable attorney's fees.

## *COUNT IV*

### *VIOLATION OF PLAINTIFFS' CIVIL RIGHTS AS ESTABLISHED BY THE MASSACHUSETTS CIVIL RIGHTS ACT AS AGAINST ALL DEFENDANTS (G.L. C. 12, SECTIONS 11H and 11I)*

71. The plaintiffs restate paragraphs 1-65 as if set forth in full here.

72. The City of Worcester and other defendants' actions, taken under color of law, against

the plaintiffs were arbitrary and capricious and were intended to threaten, coerce and

intimidate the plaintiffs without legitimate purpose.

73. Said actions taken by the City of Worcester and other defendants, under color of law,

did threaten, coerce and intimidate the plaintiffs thus injuring and damaging the

plaintiffs.

WHEREFORE, the plaintiffs demand judgment and damages in an amount to be proven at

trial together with interest, costs and reasonable attorney's fees.

## **VERIFICATION**

I, Paul F. Giorgio, declare as follows:

1. I am the manager of College Hill Properties, LLC, Caro Street    Properties, LLC and Clay Street Properties, LLC;

2. I have personal knowledge of the above entities and their activities, including those in the foregoing complaint and can competently testify to the matters stated herein;

3. I verify under the penalties of perjury that the factual allegations contained in the complaint are true and correct.

President

Paul F. Giorgio, President

Paul F. Giorgio

The Plaintiffs,
COLLEGE HILL PROPERTIES, LLC,
CARO STREET PROPERTIES, LLC,
CLAY STREET PROPERTIES, LLC,
PAUL F. GIORGIO, individually and
DIANA H. GIORGIO, individually,
By their attorneys,

12.2.2017

Jeffrey A. Denner, Esq.
B.B.O. No. 120520
Eric Stafford, Esq.
B.B.O. No. 551074
Jeffrey Denner Associates, P.C.
4 Longfellow Place 35th Floor
Boston, MA 02114
(617) 227-2800

22