UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLLEGE HILL PROPERTIES, LLC, ) <br> CARO STREET PROPERTIES, LLC, ) <br> CLAY STREET PROPERTIES, LLC, ) <br> PAUL F. GIORGIO, individually and ) <br> DIANA H. GIORIGO, individually, ) <br>               Plaintiffs ) <br> ) <br> v.                                           ) <br> ) <br> THE CITY OF WORCESTER, by and through ) <br> the DEPARTMENT OF BUILDING AND ) <br> ZONING; the DEPARTMENT OF HEALTH ) <br> AND HOUSING INSPECTIONS; the ) <br> DEPARTMENT OF INSPECTIONAL ) <br> SERVICES; the BOARD OF PUBLIC HEALTH; ) <br> WORCESTER POLICE DEPARTMENT; the ) <br> City Manager, MICHAEL V. O'BRIEN in his ) <br> Official and individual capacities; City Councilor ) <br> BARBARA HALLER in her Official and ) <br> individual capacities; Commissioner of Building ) <br> and Zoning JOHN R. KELLY, in his Official and ) <br> individual capacities; Director of Housing and ) <br> Health Inspections AMANDA M. WILSON, in ) <br> her Official and individual capacities; Code ) <br> Enforcement Officer and Housing and Health ) <br> Inspector JOHN NORDBERG, in his Official and ) <br> individual capacities; Code Enforcement Officer ) <br> and Housing and Health Inspector ) <br> JOHN CARLSON, in his Official and individual ) <br> Capacities; Police Chief GARY GEMME, in his ) <br> Official and individual capacities; Police ) <br> Lieutenant JAMES SHUGRUE, in his Official and ) <br> individual capacities; ) <br>               Defendants ) | C.A. No. 15-CV-40009 |

**<u>MEMORANDUM OF LAW IS SUPPORT OF DEFENDANTS'</u>**
**<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

I.  INTRODUCTION

Defendants, City of Worcester (City), Department of Building and Zoning, Department of Health and Housing Inspections, Department of Inspectional Services, Board of Public Health, Worcester Police Department, Michael V. O'Brien, Barbara Haller, John R. Kelly, Amanda Wilson, John Nordberg, John Carlson, Gary Gemme and James Shugrue, hereby move this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted.

On December 8, 2014, Plaintiffs' filed this action in the Worcester Superior Court, alleging various federal and state civil rights violations against the Defendants. (Doc. No. 7). Plaintiffs' cause of action arises out City's civil enforcement of the lodging house statutory system, G.L. c. 140, § 22-32 (Lodging House Act), on or about 2009 and 2010, in the Worcester Division of the Housing Court Department (Housing Court) against Plaintiffs for the operation of unlicensed lodging houses at various multi-unit rental properties in Worcester, Massachusetts. (Plaintiffs' Complaint, generally). Plaintiffs' Complaint sets forth the following federal and state claims against all Defendants:

> Count I –   Violation of Federal Civil Rights-42 U.S.C. § 1983 (Fifth and Fourteenth Amendments);
> Count II –  Violation of Federal Civil Rights-42 U.S.C. § 1983 (Fourteenth Amendment-Substantive Due Process);
> Count III – Violation of Federal Civil Rights-42 U.S.C. § 1983 (Fourteenth Amendment-Equal Protection); &
> Count IV –  Violation of Massachusetts Civil Rights Act (G.L. c. 12, §§ 11H-I).

However, Plaintiffs' Complaint fails as a matter of law and must be dismissed. In support of this motion, Defendants states the following: 1) the named City departments are not independent legal entities subject to suit; 2) Plaintiffs' federal civil rights claims and state civil rights claims are barred by the applicable statute of limitations; 3) assuming, *arguendo*, Plaintiff's claims are

2

not time-barred, Plaintiffs' Complaint fails to state plausible federal and state civil rights claims against the Defendants; and 4) Defendants are entitled to qualified immunity.

II. FACTS

Plaintiffs Paul and Diana Giorgio are the owners, through various limited liability companies,[1] of several multi-unit rental properties located in Worcester, Massachusetts at the following locations: 1 Boyden Street, 3 Boyden Street, 11 Boyden Street, 29 Caro Street, 33 Caro Street, 37 Caro Street, 38 Caro Street, 10 Boyden Street, 13 Boyden Street, 7 Clay Street and 12 Clay Street. (Plaintiffs' Complaint, ¶¶ 2-5). Plaintiffs' Complaint alleges that, on or about September and October of 2009, the City, through its Department of Inspectional Services, served the Plaintiffs with written notices citing them for the unlicensed operation of lodging houses at the above referenced properties in violation of the City's Zoning Ordinances and the Lodging House Act. (Plaintiffs' Complaint, ¶¶ 29 & 36). The notices were issued to the Plaintiffs as it was determined that Plaintiffs' were renting apartments to four unrelated adults, all students of the College of Holy Cross, in violation of the Lodging House Act. (Plaintiffs' Complaint, ¶¶ 20-21, 28-29 & 36). The City's notices ordered Plaintiffs to cease and desist the operation of unlicensed lodging houses. Id. Plaintiffs' Complaint further alleges between September of 2009 and February of 2010, in furtherance of the enforcement of the Lodging House Act, the City and agents acting on the City's behalf, conducted a number of warrantless searches of the Plaintiffs' properties. (Plaintiffs' Complaint, ¶¶ 39, 41-42). On or about January 2010, the City commenced civil actions in the Housing Court, pursuant to G.L. c. 140, § 24, seeking preliminary injunctions to restrain Plaintiffs from the operation of unlicensed lodging houses. (Plaintiffs' Complaint, ¶ 37). Following a hearing before a judge of the Housing Court, the City's preliminary injunction was granted and Plaintiffs were ordered to "forthwith reduce

---

[1] Plaintiffs College Hill Properties, LLC, Caro Street Properties, LLC and Clay Street Properties, LLC.

the number of unrelated occupants" in the subject premises "to no more than three in each legal dwelling unit." City of Worcester v. College Hill Properties, LLC, 80 Mass. App. Ct. 757, 759 (2011). The City subsequently filed contempt complaints against the Plaintiffs for refusing to comply the Housing Court injunction, and the Housing Court issued fines and a permanent injunction ordering Plaintiffs "from allowing more than three unrelated adults to reside in each dwelling unit." Id. Plaintiffs filed an appeal of the Housing Court order and the Massachusetts Appeals Court, in City of Worcester v. College Hill Properties, LLC, 80 Mass. App. Ct. 757 (2011), affirmed the final decision of the Housing Court. Plaintiffs sought and were granted further appellate review by the Supreme Judicial Court who vacated and set aside the judgments of the Housing Court and Appeals Court enjoining the Plaintiffs from allowing four unrelated adults to occupy each unit. City of Worcester v. College Hill Properties, LLC, 465 Mass. 134 (2013). Notwithstanding the SJC decision, the Court did note that the City's Zoning Ordinance properly prohibited the operation of rental units with four or more unrelated residing in each dwelling unit. Id. at 138 n.10, citing Worcester v. Bonaventura, 56 Mass. App. Ct. 166, 169 (2002).

Plaintiffs' Complaint further alleges, on or about 2012, the Defendants cited Plaintiff "Paul F. Giorgio with aiding and abetting prostitution, in violation of the Lodging House Act, for failing to 'control' the action and behaviors of the tenants." (Plaintiffs' Complaint, ¶¶ 57-58). Notwithstanding the inaccuracy of the allegations in Plaintiffs' Complaint, an application for a criminal complaint was filed on August 4, 2011 in Worcester District Court against Plaintiff Paul F. Giorgio for being "Keeper of a Disorderly House," in violation of G. L. c. 272, § 53, at 38 Caro Street, Worcester, Massachusetts. In support of the filing of this charge, on July 31, 2011, officers of the Worcester Police Department reported to 38 Caro Street for a reported loud house.

(See Application for Criminal Complaint and Statement of Facts in Support of Application for Criminal Complaint and Criminal Complaint, attached hereto as Exhibit 1.[2]) Worcester police officers determined that the property was owned by Plaintiff Paul F. Giorgio and officers of the Worcester Police Department had previously responded on 35 occasions in the past 24 months. Id. Upon the filing of the application for a criminal complaint and affidavit in support thereof, an assistant clerk magistrate of the Worcester District Court determined that probable cause existed for the issuance of charge against Plaintiff Paul F. Giorgio for violation of G. L. c. 272, § 53. Id. On June 20, 2012, a *nolle prosequi* was filed by the Commonwealth with regard to the charge against Plaintiff Paul F. Giorgio. (Criminal Docket attached hereto as Exhibit 2.) Plaintiffs' Complaint further alleges, on various dates between September 24, 2012, and December 4, 2012, an inspector from the City Inspectional Services Department conducted multiple inspections at Plaintiffs' properties relative to complaints received for trash outside of the residences. (Plaintiffs' Complaint, ¶ 59).

III. ARGUMENT

    A. Rule 12(b)(6) Standard

Whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). To survive a 12(b)(6) motion to dismiss, a complaint must include a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The pleadings need not contain detailed factual allegations, but they do require some factual matter beyond mere labels and legal conclusions.

---

[2] Defendants attach the application for criminal complaint, statement of facts, criminal complaint and docket for reference to the Memorandum of Law in Support of Defendants' Motion to Dismiss as documents central to a plaintiffs' claims or sufficiently referred to in the complaint, which can be used in a motion to dismiss context without converting the motion to a request for summary judgment. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see also Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.2 (2004) (collecting cases).

Twombly, 550 U.S. at 554. The court should first identify and disregard conclusory allegations. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (citing Iqbal, 556 U.S. at 662). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Id. at 12 (quoting Iqbal, 556 U.S. at 680). The remaining "[n]on-conclusory factual allegations in the complaint must be then treated as true, even if seemingly incredible" and assessed to determine whether they, "allow … the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 12 (quoting Iqbal, 556 U.S. at 678). If they do, "the claim has facial plausibility." Id.

> B. Plaintiffs' Claims Against City of Worcester Departments of Building and Zoning, Health and Housing Inspections, Inspectional Services, Board of Public Health and Worcester Police Department Must Be Dismissed as Municipal Departments Are Not Independent Legal Entities Subject to Suit.

Plaintiffs' claims against City Departments of Building and Zoning, Health and Housing Inspections, Inspectional Services, Board of Public Health and Worcester Police Department are subject to dismissal as municipal departments are not independent legal entities subject to suit under 42 U.S.C. § 1983. A suit against a municipal department is the legal equivalent of a suit against the municipal entity. See Kentucky v. Graham, 473 U.S. 159, 166 (1985); See Bouley v. City of New Bedford, No. 00-CV-12580-RGS, 2005 U.S. Dist. Lexis 30922 (D. Mass. 2005) (holding municipal departments named as defendants dismissed as entities not subject to suit under § 1983). Moreover, "[f]or purposes of a Section 1983 action, a police department is considered a non-person" and, therefore, "is not a suable entity." Curran v. City of Boston, 777 F. Supp. 116, 120 (D. Mass. 1991) (holding Boston Police Department is not a suable entity or proper party defendant); see also Douglas v. Boston Police Department, No 10-11049-WGY, 2010 WL 2719970 (D. Mass. 2010) (dismissing suit against a municipal police department

because the department "has no legal existence or liability to suit separate from the [municipality]"); Lumpkin v. Lucey, No. 09-11921-RGS, 2010 WL 1794400 (D. Mass. 2010) (dismissing suit against Springfield Police Department as it is not a legal entity and does not qualify as a proper defendant to a lawsuit); Henschel v. Worcester Police Department, 445 F.2d 624, 624 (1st Cir. 1971) (City of Worcester Police Department is not a suable entity); Sheldon v. Worcester Police Department, No. 11-40082-TSH, 2013 U.S. Dist. Lexis 46892 (D. Mass. 2013) ("Worcester Police Department is not a legal entity, but a department within the City of Worcester, and therefore does not qualify as a proper party defendant"). Accordingly, Plaintiff's claims against the City of Worcester Departments of Building and Zoning, Health and Housing Inspections, Inspectional Services, Board of Public Health and Worcester Police Department must be dismissed as these municipal departments are not independent legal entities subject to suit.

  C. <u>Plaintiffs' Claims Under 42 U.S.C. § 1983 Are Time-Barred By The Applicable Statute of Limitations.</u>

Plaintiffs' Complaint asserts four counts against all Defendants: three federal civil rights claims under 42 U.S.C. § 1983 (Counts 1, 2, and 3) and a state civil rights claim under G.L. c. 12, § 11H-I (Count 4). However, Plaintiffs' claim are time-barred as they arise out of the Defendants' alleged wrongful enforcement of the Lodging House Act.

42 U.S.C. § 1983 creates a "private right of action for redressing abridgments or deprivations of federal constitutional rights." McIntosh v. Antonino, 71 F.3d 29, 33 (1st. Cir. 1995). "Section 1983 does not contain a built-in statute of limitations." Nieves v. McSweeney, 241 F.3d 46, 51 (1st. Cir. 2001). Consequently, "a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of action." Id. Under Massachusetts law, the limitations period for personal injury

7

is three years. See id.; G. L. c. 260, § 2A. Accordingly, the three-year limitations period applies to Plaintiffs' claims (Counts I, II and III) that the Defendants' alleged conduct deprived them of their constitutional rights in violation of section 1983. Moreover, Plaintiffs' claim under the Massachusetts Civil Rights Act (Count IV) is subject to the three-year limitations period as set forth in G. L. c. 260, § 5B.

While the length of the statute of limitations is based on state law, "[f]ederal law determines the date on which the statute of limitations begins running." Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st. Cir. 2007). Ordinarily, under federal law, "section 1983 claims accrue 'when the plaintiff knows, or has reason to know, of the injury on which the action is based.'" Id. (quoting Guzman-Rivera v. Rivera-Cruz, 29 F.3d 3, 5 (1st. Cir. 1994)). However, "[t]he knowledge required is not notice of every fact which must eventually be proved in support of a claim, but rather knowledge that an injury has occurred." Tedeschi v. Reardon, 5 F. Supp. 2d 40, 44 (D. Mass. 1998) (quotations and citation omitted). See also Marrero-Gutierrez, 491 F.3d at 5-6 (explaining that "[a] claimant is deemed to 'know' or 'learn' of a discriminatory act at the time of the act itself and not at the point that the harmful consequences are felt"). Therefore, the critical question is: "at what juncture did [the plaintiff] reliably know of the injury to which this claim relates?" Tedeschi, 5 F. Supp. 2d at 44 (quotation omitted).

The thrust of Plaintiffs' claims are based upon the alleged unlawful enforcement of the Lodging House Act by the Defendants in 2009 and 2010. In fact, Plaintiffs' Complaint prefaces the present action by stating this is "an action by the plaintiffs against multiple defendants of the City of Worcester seeking damages and declaratory relief on account of Defendants' Violations of the plaintiffs' civil rights by the selective enforcement…" of the Lodging House Act. (Plaintiffs' Complaint, Introduction). Moreover, Plaintiffs' Complaint establishes that the crux

of the Defendants' enforcement of the Lodging House Act was conducted by the Defendants from September 2009 to February 2010 through the use of cease and desist orders and the prosecution of the civil enforcement actions in the Housing Court. (Plaintiffs' Complaint, ¶¶ 28, 29, 30, 36, 37, 38, 41 and 51). As such, Plaintiffs' Complaint definitively sets forth that their claims for federal and state civil rights violations relative to the Defendants enforcement of the Lodging House Act accrued, at the latest, in February of 2010 and that Plaintiffs were aware of the alleged unlawful acts during that time frame. Id. However, Plaintiffs did not file the present action in Worcester Superior Court until December 8, 2014, nearly one year and ten months after the statute of limitations expired for these claims. Accordingly, where the Plaintiffs alleged federal and state civil rights claims accrued on or about February 2010, the present matter is time-barred by the statute of limitations and must be dismissed.

It is anticipated that Plaintiff will contend that their claims are not time-barred and that a "continuing violation" of this unlawful enforcement by Defendants existed up to December of 2012. (Plaintiffs' Complaint, ¶¶ 58 and 59). However, Plaintiffs' likely reliance on the "continuing violation" theory or any of the alleged actions of the Defendants in 2012 (Plaintiffs' Complaint, ¶¶ 57-58) are without merit and fail in preserving Plaintiffs' claims. The "continuing violation" theory "is an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st. Cir. 2003). However, the First Circuit has "specifically repudiated a 'continuing violation' theory for civil rights cases, except where conspiratorial conduct arises before any tort occurs." Kennedy v. Town of Billerica, 502 F. Supp.2d 150, 155 (1st. Cir. 2007). Thus, any reliance on an alleged "continuing violation"

would be misplaced as the Plaintiffs' cause of action accrued in February 2010 and Plaintiffs were aware, or should have been aware, of a cause of action at that time. Plaintiffs cannot circumvent the accrual of their action related to the City's enforcement of the Lodging House Act by referencing allegations of conduct at a later time, as a continuing violation theory is not actionable in this civil rights case. See Nieves, 241 F.3d at 52. Neither does any inferred conspiratorial conduct alleged in Plaintiffs' Complaint serve to fit within the exception for section 1983 cases, as Plaintiffs allege conspiracy as it relates to conduct in 2012, not prior to the onset of Plaintiffs' tort claims. See Kennedy, 502 F. Supp. 2d at 155

Moreover, to the extent that Plaintiffs rely upon the 2012 criminal charges and inspections to save their claim, Plaintiffs' reliance is misplaced as the conduct complained of has no nexus to the City's enforcement of the Lodging House Act. As noted, *supra*, Plaintiff Paul F. Giorgio's criminal complaint was issued for being the keeper of a noisy or disorderly house. (Exh. 1). Additionally, trash inspections have no nexus to the enforcement of the Lodging House Act. Thus, the alleged wrongful acts of the Defendants in 2012 do not preserve Plaintiffs' claim as they were acts were conducted after the City's enforcement of the Lodging House Act and, were police and sanitary code actions, separate and distinct from the City's enforcement efforts related to the Lodging House Act.

    D.    Assuming, *Arguendo*, Plaintiffs' Claims Are Not Time-Barred, Plaintiffs' Complaint Fails To Set Forth Plausible Federal And State Civil Rights Claims Against The Defendants.

In order to sustain a federal civil rights claim pursuant to 42 U.S.C. § 1983, a plaintiff must satisfy two elements: demonstrating first that the challenged conduct was undertaken by a person acting under color of state law and second that "the conduct . . . worked a denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir.

1997), cert. denied, 522 U.S. 819 (1997). Thus, as Defendants were City employees and/or representative at time of alleged events, the inquiry then turns to whether Plaintiffs were denied a constitutional right.

       1.    *Count I-Regulatory Taking-Fifth and Fourteenth Amendment*

Count I of Plaintiffs' Complaint alleges that the Defendants' actions in enforcing the Lodging House Act served as a regulatory taking without just compensation in violation of the Fifth and Fourteenth Amendments. (Plaintiffs' Complaint, ¶¶ 62-63). The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use without just compensation. See Maine Educ. Ass'n Benefits Trust v. Cioppa, 695 F.3d 145, 152 (1st Cir. 2012). The clause applies to not only the paradigmatic physical taking ... but also to regulatory interferences, which transpire when some significant restriction is placed upon an owner's ... property [use] for which fairness and justice require that compensation be given. Id. (citation and internal quotations omitted). When assessing whether a regulatory taking occurred, courts utilize a three-pronged analysis which considers (1) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations, (2) the regulation's economic impact on the property owner and (3) the character of the government action. Id. at 153 (citing Penn Cent. Transp. Co v. City of New York, 438 U.S. 104, 124 (1978)). Rather than operating as a set formula or checklist, these factors serve as "a lens through which a court can view and process the facts of a given case." Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998).

Notwithstanding the failure to timely file this matter, Plaintiffs' Complaint fails to set forth a plausible claim for relief against the Defendants. The Defendants enforcement of the Lodging House Act does not constitute a "regulatory taking," as no unlawful restriction was

placed upon the Plaintiffs' real estate holdings. Further, as noted, *supra*, the SJC stated that the City, through its Zoning Ordinance, could lawfully prohibit four unrelated adults from residing within the same dwelling unit and, as such, the City was legally entitled to enforce, under the Zoning Ordinance, the same living arrangements which Plaintiffs allege as being in violation of their Fifth and Fourteenth Amendment rights. Accordingly, Plaintiffs' claims of a "regulatory taking" under the Fifth and Fourteenth Amendments fail.

        2.    *Count II-Denial of Substantive Due Process - Fourteenth Amendment*

Count II of Plaintiffs' Complaint alleges a denial of substantive due process by the Defendants alleged "arbitrary and capricious" actions that was "motivated by individual discriminatory intent and/or political motivation and without regard to any legitimate governmental function or policy." (Plaintiffs' Complaint, ¶¶ 65-66). In order to determine whether the actions of the Defendants violated the Plaintiffs' substantive due process, the Court must analyze "whether the behavior of the government officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 880 (1st. Cir. 2010). This inquiry by the court is primarily concerned with "violations of personal rights … so severe … so disproportionate to the need presented, and … so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience." Id. at 881 (quotation omitted). The First Circuit had noted that a violation of due process occurs only in a "truly horrendous situation." Nestor Colon Medina v. Custodio, 964 F.2d 32, 45 (1st. Cir. 1992). Moreover, the "the shock the conscience test is an extremely demanding one, and challenges analyzed under it rarely succeed." Gonzalez-Fuentes, 607 F.3d at 885. "Even executive action that does shock the conscience will still not infringe substantive due process

12

unless it also deprives an individual of a 'protected interest in life, liberty, or property.'" Id. at 880 n.13.

In the case at bar, the Defendants enforcement of the Lodging House Act relative to Plaintiffs' properties "even if arbitrary" or based on "animus" does not constitute "the kind of conscience-shocking abuse of governmental power required for showing a substantive due process violation." Collins, 244 F.3d at 250-51 (1st. Cir. 2001). Thus, as a matter of law, the Plaintiffs do not state a plausible claim that would meet the high standard to establish a substantive due process violation. Moreover, as discussed above, the Plaintiffs do not state a plausible claim that the enforcement of the Lodging House Act would deprive Plaintiffs of their protected interest in "life, liberty, or property." Accordingly, Plaintiffs' substantive due process claim against Defendants fails.

### 3. Count III - Equal Protection - Fourteenth Amendment

Count III of Plaintiffs' Complaint alleges a violation of Plaintiffs' right to equal protection of under the Fourteenth Amendment. Specifically, Plaintiffs allege selective enforcement of the Lodging House Act by Defendants. (Plaintiffs' Complaint, ¶¶ 68-70).

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982)). To state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that he has "been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Engquist v. Oregon Dept. of Agr., 533 U.S. 591, 601 (2008) (quotation omitted). A Plaintiff must allege

"facts indicating selective treatment 'compared with others similarly situated ... based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 57 (1st. Cir. 2006) (quoting Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st. Cir. 2001).

In order for Plaintiff to give Defendant fair notice and to state "facially plausible legal claim[s]" under the first prong of the Equal Protection Clause standard he must "identify his putative comparators and put forth some facts showing the existence of malice or some other impermissible consideration." Harron v. Town of Franklin, 660 F3d 531, 537 (1st. Cir. 2011). When determining whether Plaintiff and the putative comparators are similarly situated, "'exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.'" Lakeside Builders, Inc. v. Planning Bd. of Town of Franklin, 2011 WL 31655250 at *3 (D. Mass. 2002) (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st. Cir. 1989)). To effect this comparison, plaintiffs claiming an equal protection violation must first "identify and relate specific instances where persons situated similarly 'in all relevant aspects' were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were 'singled ... out for unlawful oppression.'" Rubinovitz v. Rogato, 60 F.3d 906, 910 (1st. Cir. 1989) (quoting Dartmouth Review, 889 F.2d at 19).

In the present matter, Plaintiffs do not state an actionable claim for an equal protection violation for a number of reasons. First and foremost, Plaintiffs were not the only parties against whom the City attempted to enforce the Lodging House Act. As noted in both the Appeals Court and SJC decisions related to the parties, the City also brought Lodging House Act enforcement actions against Michele and Paul Meaney, the owners of rental properties at 21 and 23 Caro

14

Street. As such, Plaintiffs allegations of selective enforcement fails, as they were not treated differently from other landlords who were in a comparative class. Moreover, while Plaintiffs cite to landlords who they allege also violated the Lodging House Act, they fail offer sufficient factual basis to support how these landlords were similarly situated and/or how they were treated differently. As such, Plaintiffs' Complaint does not set forth a viable claim for a violation of equal protection under the Fourteenth Amendment.

*4. Count IV – MCRA - G. L. c. 12, §11H-I*

Count IV of Plaintiffs' Complaint alleges a violation of their state civil rights under the Massachusetts Civil Rights Act. Plaintiffs allege that the Defendants "intended to threaten, coerce and intimidate the plaintiffs without legitimate purpose. (Plaintiffs' Complaint, ¶ 72). To recover under the Massachusetts Civil Rights Act (MCRA), G. L. c. 12, § 11I, a Plaintiff must show that "(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" Bally v. Northeastern University, 403 Mass. 713, 717 (1989). The words "threats, intimidation and coercion" have been defined as follows:

> "Threat" in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. "Intimidation" involves putting in fear for the purpose of compelling or deterring conduct…. "[C]oercion" … [is] the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.

Planned Parenthood League of Massachusetts, Inc. v. Blake, 417 Mass. 467, 474 (1994) (quotations omitted). There must also be evidence of "actual or potential physical confrontations involving a threat of harm." Id. at 473 n.8. It is important to note that "[n]ot every violation of law is a violation of the state Civil Rights Act. A direct violation of a person's right does not by

15

itself involve threats, intimidation or coercion and thus does not implicate the Act." Longval v. Commissioner of Correction, 404 Mass. 325, 333 (1989), citing Pheasant Ridge Assoscs. Limited Partnership v. Burlington, 339 Mass. 771, 781 (1987). Thus, even if this Court should find that Plaintiffs have set forth sufficient basis to demonstrate that a Constitutional right has been violated, in the absence of any showing that the Plaintiff was coerced into refraining from the exercise of a right or privilege secured by law, an MCRA claim cannot stand. See Titus v. Town of Nantucket et al., 840 F. Supp. 2d 404, 416 (D. Mass. 2011)

Here, as a threshold matter, there has been no constitutional deprivation. As argued, *supra*, the Defendants enforcement of the Lodging House Act did not violate the Plaintiffs' constitutional rights under the Fifth or Fourteenth Amendments. Even if the Court could find that a constitutional deprivation has occurred, the Plaintiff has failed to allege threats, intimidation or coercion within the meaning of the MCRA. In this present matter, the threat of enforcement of the Lodging House Act through lawful means does not rise to the level of threats, intimidation or coercion as required under the MCRA. See Smith v. City of Boston, No. 03-10062-DPW, 2004 U.S. Dist. Lexis 13062 (D.Mass.2004) ("Generally, by itself a threat to use lawful means to reach an intended result is not actionable under the MCRA."). As such, the City's use of the statutory framework to confront Plaintiffs' unlicensed operation of a lodging house does not violate the MCRA and Plaintiffs' claim must be dismissed.

    D.    <u>Defendants Are Entitled To Qualified Immunity</u>.

        1.    *Federal Claims.*

In the event that this Court does not dismiss Plaintiffs' Complaint for the reasons set forth above, the Defendants are entitled to qualified immunity from liability for the alleged federal civil rights violations described in Plaintiffs' Complaint. Whether an individual is entitled to

qualified immunity is determined by applying an objective standard. Harlow v. Fitzgerald, 457 U.S. 800, 817-8 (1982). "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. The inquiry on a motion to dismiss brought by an official seeking qualified immunity is "whether a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." McBride v. Taylor, 924 F.2d 386, 389 (1st. Cir. 1991). As this Court has noted, following Pearson v. Callahan, 555 U.S. 223 (2009), the First Circuit abandoned its former three-part qualified immunity analysis and adopted the two-part test articulated in Pearson. See Maldonado v. Fontanes, 568 F.3d 263, 269 (1st. Cir. 2009). Now, this Court must consider: 1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and 2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Id.

As to the second prong of the analysis, there are two aspects, the first focused "on the clarity of the law at the time of the alleged civil rights violation," id., and the second focused "more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiff['s] constitutional rights." Id. "Cognizant of both the contours of the allegedly infringed right and the particular facts of the case, '[t]he relevant dispositive inquiry in determining whether a right is clearly established is **whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted' . . . [and] whether [the defendant had] fair warning that his particular conduct was unconstitutional."** Maldonado, 568 F.3d at 269 (citations omitted) (emphasis added).

As discussed above, the first prong of this test would not be satisfied as the Plaintiffs' Complaint does not set forth an actionable claim for a violation of Plaintiffs' Fifth and Fourteenth Amendment rights. Moreover, even if Plaintiffs' Complaint set forth an actionable claim, the Plaintiffs' constitutional rights were not "clearly established" when the City began to enforce the Lodging House Act in 2009 and 2010. In support of that position, the Defendants point to the determinations of both the Housing Court and the Appeals Court which upheld the actions of the Defendants and enjoined the Plaintiffs from operating unlicensed lodging houses under G. L. c. 140, § 24. While the legal issues as to the City's enforcement of the Lodging House Act was eventually taken up by the SJC and settled with the decision overturning the Housing Court and the Appeals Court decisions, the procedural history of this matter reflects the differing interpretations of the Housing, Appeals and Supreme Judicial Courts as to the City's enforcement of the Lodging House Act. Given the differing decisions of the various courts, it is apparent that the law as it related to the Lodging House Act was not clearly established at the time of the enforcement action and was subject to varying interpretations. Therefore, as there as no constitutional violation, or, at the very least, Plaintiff's constitutional rights were not "clearly established," qualified immunity should attach and Plaintiffs' Complaint should be dismissed.

IV. CONCLUSION

For the foregoing reasons, all claims against Defendants, Counts I-IV of Plaintiffs' Complaint, should be dismissed.

CITY OF WORCESTER ET AL.,

By their attorneys,

David M. Moore
City Solicitor

*/s/ Kevin M. Gould*
Wendy L. Quinn (BBO# 653954)
Kevin M. Gould (BBO# 661545)
Ann S. Refolo (BBO# 650342)
Assistant City Solicitors
City Hall, Room 301
455 Main Street
Worcester, MA 01608
(508) 799-1161
gouldk@worcesterma.gov

CERTIFICATE OF SERVICE

I, Kevin M. Gould, hereby certify that, on this 9th day of February, 2015, the within Memorandum in Support of Defendants' Motion to Dismiss was served upon all counsel of record through this Court's electronic filing system as identified on the Notice of Electronic Filing, and there are no non-registered participants.

*/s/ Kevin M. Gould*
Kevin M. Gould
Assistant City Solicitor