UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLLEGE HILL PROPERTIES, LLC,<br>CARO STREET PROPERTIES, LLC,<br>CLAY STREET PROPERTIES, LLC,<br>PAUL F. GIORGIO, individually and<br>DIANA H. GIORIGO, individually,<br><br>    Plaintiffs,<br><br>v.<br><br>THE CITY OF WORCESTER, by and through the DEPARTMENT OF BUILDING AND ZONING, the DEPARTMENT OF HEALTH AND HOUSING INSPECTIONS, the DEPARTMENT OF INSPECTIONAL SERVICES, the BOARD OF PUBLIC HEALTH WORCESTER POLICE DEPARTMENT, the City Manager, MICHAEL V. O'BRIEN in his Official and individual capacities, City Councilor BARBARA HALLER in her Official and individual capacities, Commissioner of Building and Zoning JOHN R. KELLY, in his Official and individual capacities, Director of Housing and Health Inspections AMANDA M. WILSON, in her Official and individual capacities, Code Enforcement Officer and Housing and Health Inspector JOHN NORDBERG, in his Official and individual capacities, Code Enforcement Officer and Housing and Health Inspector JOHN CARLSON, in his Official and individual capacities, Police Chief GARY GEMME, in his Official and individual capacities, Police Lieutenant JAMES SHUGRUE, in his Official And individual capacities,<br>    Defendants. | C.A. No. 4:15-CV-40009-TSH |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

This is an action by the plaintiffs against multiple defendants of the City of Worcester by Verified Complaint seeking damages and declaratory relief on account of the Defendants' violations of the plaintiffs' civil rights by the selective enforcement of laws against them that the Supreme Judicial Court ruled were not applicable. On or about May 15, 2013, the Supreme Judicial Court of the Commonwealth of Massachusetts decided the case of *City of Worcester Department Of Inspectional Services v. College Hill Properties, LLC*, 465 Mass. 134, in favor of College Hill Properties, LLC and other parties now plaintiffs to the instant action. The case before the Supreme Judicial Court involved the policy and procedure of the City of Worcester in bringing civil enforcement actions against the plaintiffs for operating a lodging house without a license when those landlords rented single apartment units to four or more unrelated adults, namely college students enrolled at Holy Cross College. The Court ruled that, "[t]he Lodging House Act, however, has no application in these circumstances. The apartments as occupied are not lodgings so as to render (the properties) lodging houses under G. L. c. 140 sec. 22, and the judgments enjoining the defendants from allowing four unrelated adults to occupy each of the apartments cannot stand." It is the plaintiffs' position that the causes of action set forth in the complaint accrued on May 15, 2013 when the Supreme Judicial Court issued the decision in *City of Worcester Department of Inspectional Services v. College Hill Properties, LLC*, et al and the claims presented are timely. In the alternative, the plaintiffs submit that they were unaware of unlawfulness of defendant's conduct and the resulting injury until the Supreme Judicial Court rendered it's decision on May 15, 2013, all claims advanced herein are timely. In all other respects, the plaintiffs submit that their claims.

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action in accordance with law under any theory, a motion to dismiss the complaint must be denied. *Nollet v. Justices of the Trial Court of Com. of Mass.,* 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd,* 248F.3d 1127 (1st Cir.2000).

## ARGUMENT

It is well settled in the 1st Circuit that the plaintiff must allege and prove three elements for liability to attach for Section 1983 claims; (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a right guaranteed under the Constitution. *Canney v. City of Chelsea, 925 F. Supp. 58(D. Mass. 1996) citing Holland v. Breen, 623 F. Supp. 284, 290 (D. Mass. 1985).* The Plaintiffs' Complaint expressly and specifically sets out these elements in Paragraphs 47-64:

47. These tactics, as set forth in paragraphs 45 and 46, were implemented and employed at the direction of Worcester City Manager Michael V. O'Brien as part of a scheme to target and harass a select few landlords it considered easy targets such as "bad actors like Giorgio" to use as pawns in its plan to coerce tax exempt entities to make "voluntary" payments to the City of Worcester in lieu of property taxes.

48. The Department of Inspectional Services repeatedly executed warrantless entry into premises leased to students by College Hill Properties, LLC, Caro Street Properties, LLC and Clay Street Properties, LLC. John Nordberg and John Carlson performed these warrantless and unlawful searches on the targets of selective enforcement, under color of law, as City of Worcester Code Enforcement Officers and Housing and Health Inspectors at the express direction of Worcester City Manager Michael V. O'Brien, Commissioner of Building and Zoning John R. Kelly, City Councilor Barbara Haller and Director of Housing and Health Inspections Amanda M. Wilson for illegitimate purpose and in furtherance of its unlawfully motivated and implemented agenda.

49. In excess of 40 inspections were performed, under color of law, by John Kelly and Joseph Sansoucy in a 60-75 day period in furtherance of the City of Worcester's plan. For most of these wrongful inspections, City Councilor Barbara Haller was present and personally observed the inspections from her automobile in an attempt to intimidate the plaintiffs as Haller had previously informed Paul F. Giorgio, who's rental units were in Haller's City Council District, that she would use all of her political influence to create so many problems for Giorgio that her actions would put him out of business. Michael V. O'Brien confirmed Haller's personal animus for Giorgio was a motivating component of the scheme of selective enforcement against Paul F. Giorgio in a meeting at which Massachusetts State Representative Binienda was present.

50. In the rare instance that landlords other than the plaintiffs, such as Hampton Properties, received administrative orders from the City of Worcester for renting apartments to more than three unrelated persons such as at 913 and 919 Main Street, Worcester, MA, Worcester City Manager Michael V. O'Brien intervened to ensure that no further

enforcement action was taken and that Hampton Properties did not lose tenants or revenue as a result of any enforcement action. This was done, as stated by O'Brien, because the law was only to be applied against people "like Giorgio." By this admission, Michael V. O'Brien's confirmed that the City of Worcester had a policy of selectively enforcing the Lodging House Act against handpicked parties but not against all it was aware were renting or leasing to more than three unrelated persons in apartment units.

51. In particular, Kensington Management, Blake Rubin and Hampton Properties received cease and desist administrative orders from the City of Worcester for alleged violation of the Lodging House Act, and on each such occasion no action was taken by Nordberg and/or Carlson to advance or enforce the administrative orders and Kensington Management, Blake Rubin and Hampton Properties took no action that remedied the alleged noncompliance nor did any reduce the number of tenants in their units to less than four. In its selective enforcement of the law, the City did not compel those landlords to comply with the orders nor evict any tenants, as the City did in matters involving the plaintiffs. In other similar situations, including those of landlord Michael Higgins, who is a Worcester Police Officer, and Michael Bartsiewicz, both known by the City to be renting or leasing to more than three unrelated tenants, the City of Worcester has taken no action against them of any kind to enforce the law.

52. In a meeting with Worcester City Manager Michael V. O'Brien, also attended by Massachusetts State Representative John Binienda, Paul F. Giorgio was informed by O'Brien that City Councilor Barbara Haller was personally targeting him for harassment and that the City's purported enforcement actions against him were being conducted, in

part, to placate her and also to advance the attempt to obtain voluntary contributions in lieu of taxes from tax exempt entities.

53. At the same meeting, Worcester City Manager Michael V. O'Brien informed Giorgio that he was "in the cross-fire" of a dispute between the City of Worcester and the College of the Holy Cross because of the City's demand that Holy Cross, which was statutorily exempt from paying property taxes, make voluntary payments of $1,000,000.00 per year in lieu of property taxes to the City of Worcester, like other Worcester resident colleges were doing. If Holy Cross did so, according to O'Brien, all enforcement actions against Giorgio and his companies College Hill Properties, LLC, Caro Street Properties, LLC and Clay Street Properties, LLC would immediately cease. When specifically asked by Giorgio "if all of this would go away if Holy Cross wrote the check," O'Brien assured Giorgio that it would.

54. At the City of Worcester's insistence, the College of the Holy Cross provided the City with the names and addresses of all students living in properties owned by the plaintiffs without their consent and deliberately misinformed parents of Holy Cross students that Giorgio or his properties were banned or under investigation. The effect of this was to make it improbable if not impossible for plaintiffs to rent the apartment units to Holy Cross students. Plaintiff Paul F. Giorgio witnessed City of Worcester Code Enforcement Officer John Nordberg in possession of the list of students provided on several occasions during which Nordberg was "inspecting" properties owned by the plaintiffs.

55. At the City of Worcester's insistence that the apartment buildings were lodging houses, the plaintiffs in 2010 attempted to comply with contempt orders by evicting one tenant from each apartment and by applying for licenses to operate Lodging Houses. The

applications for licenses to operate Lodging Houses were denied by the City of Worcester.

56. By compelling Paul F. Giorgio and the other plaintiffs to either evict lawful tenants with property rights granted by lease or obtain a lodging houses licenses for the properties, the City of Worcester acted in an arbitrary and capricious manner and in excess of statutory authority thereby depriving Giorgio of his properties rights under the United States Constitution and Massachusetts General laws c. 12 sections 11H and 11I.

57. The City of Worcester's actions in compelling Paul F. Giorgio to either evict lawful tenants with property rights granted by lease or obtain lodging house licenses on the basis of kinship is arbitrary and capricious manner and in excess of statutory authority thereby depriving Giorgio of his properties rights under the United States Constitution and Massachusetts General Laws c. 12 sections 11H and 11I.

58. The City of Worcester's actions in conducting warrantless searches of property owned by the plaintiffs and in attempting to collect evidence by coercive and unlawful means violates the plaintiffs rights as guaranteed by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. Section 1983, Massachusetts General laws c. 12 Sections 11I and Articles 1, 10 and 12 of the Declaration of Rights of the Massachusetts Constitution.

59. The City of Worcester's actions in compelling Paul F. Giorgio to either evict lawful tenants or obtain lodging house licenses were not imposed upon Kensington Management, Blake Rubin, Hampton Properties, Michael Higgins, Michael Bartsiewicz and numerous others renting or leasing to more than three unrelated persons was, therefore, selective and discriminatory in that it punished those without the political

influence possessed by those who received preferential treatment by the City of Worcester.

60. In June 2011, Paul F. Giorgio applied for a building permit to install a replacement rear porch staircase at 38 Caro Street. The City of Worcester failed and refused to grant the permit during the period required by statute despite its prior expressions of strict policy enforcement relating to safety issues of the student tenants in the rental units owned by the plaintiffs and putting him at risk of violating building and safety codes.

61. In a further effort to intimidate and threaten the plaintiffs, the City of Worcester cited Paul F. Giorgio with aiding and abetting prostitution, in violation of the Lodging House Act, for failing to "control" the action and behaviors of the tenants. This was a completely unwarranted and frivolous action by the City intended to malign the plaintiff Giorgio. The false charges dismissed but subjected Giorgio to Court appearances, legal fees and public embarrassment.

62. In 2012, Police Lieutenant James Shugrue informed Paul F. Giorgio that the Worcester Police Department had filed complaints against him allegedly because of neighbors' complaints of trash at the plaintiffs' properties. This was false as the only neighbors to the subject property were the plaintiffs. The City caused Worcester Police Detail Officers to make weekly reports to City of Worcester Health Inspectors to further harass and bring civil enforcement actions against the plaintiffs. In the same time frame, Lieutenant James Shugrue directed other Worcester police officers to continue to make weekly warrantless entries into the leased premises owned by the plaintiffs to search for the current number of occupants in each apartment unit.

63. In a continuing effort to harass and annoy the plaintiffs, City of Worcester Housing Inspector John Carlson came to properties owned by College Hill Properties, LLC, Clay Street Properties, LLC and Caro Street Properties, LLC on ten separate occasions to cite the plaintiff Paul F. Giorgio for failing to remove a single empty spool of toilet paper from the exterior. The inspections were done on 9/24/12, 9/25/12, 10/1/12, 10/2/12, 10/5/12, 10/15/12, 10/16/12, 11/19/12, 11/30/12 and 12/4/12.

64. The actions taken by the City of Worcester as aforesaid were taken not in furtherance of any legitimate and/or lawful governmental function but were unjustly and unlawfully undertaken to selectively enforce the inapplicable lodging house statute and harass him by bringing other unwarranted charges against Paul F. Giorgio and companies duly organized and registered with the Secretary of the Commonwealth in which Giorgio held a financial interest.

Plaintiff's Verified Complaint sets forth sufficient allegations that his civil rights were violated, in particular, his equal protection right. Specifically, the plaintiff alleges that the City and its various agencies selectively enforced the zoning laws, which were later declared unconstitutional by the SJC, and that such selective enforcement was carried out in bad faith and with the intent to injure the plaintiff.

Under 42 U.S.C. § 1983, a party established a claim for selective enforcement by establishing: (1) that it was selectively treated compared with others similarly situated, and either (2) that the selective treatment was based on "impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights" or (3) "malicious or bad faith intent to injure." *See* generally Tapalian v. Tusino, 377 F.3d 1 (1st Cir. 2004); Rubinovitz v. Rogato, 60 F.3d 906 (1st Cir. 1995); Yeradi's Moody St. Restaurant & Lounge v. Bd. of Selectmen, 878

F.2d 16, 21 (1st Cir. 1989). As has been set forth above, the plaintiffs were the subject of the City's "enforcement actions" against landlords renting to four unrelated tenants while other landlords renting to four tenants; namely Kensington Management, Blake Rubin and Hampton Properties were not. Indeed, the Worcester City Manager, Michael V. O'Brien stated that the law was only to be applied against people "like Giorgio." Plaintiffs' Complaint paragraph 50.

Specifically, the Plaintiff "must first identify and relate specific instances where persons situated similarly in all relevant aspects were treated differently, instances which have the capacity to demonstrate that [plaintiffs] were singled out for unlawful oppression." Rubinovitz, 60 F.3d at 909-10 (internal quotation marks omitted) (alterations in original) (quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)). Plaintiff's Verified Complaint at paragraphs 50, 51 and 59 established that there were numerous other property owners who operated their properties in the same manner as the plaintiff, i.e. – they were similarly situated.

The Verified Complaint also establishes that said property owners were not treated in the same manner as the plaintiff and supports plaintiff's claim that his constitutional rights were violated.  Moreover, the Verified Complaint establishes that the City, through its various agencies and employees, maliciously set out to injure the plaintiff, while ignoring other persons similarly situated.

It is respectfully submitted that the evidence which plaintiff will adduce throughout this litigation will show that while other property owners were cited for violations, no further action was taken against them. Conversely, the evidence will show the Defendants maliciously and intentionally focused on and harassed the plaintiff, while ignoring other persons similarly situated, all in violation of his civil rights.

It is the Plaintiffs' position that the statute of limitations did not begin to run on this matter until the Supreme Judicial Court decided that the City's actions in attempting to apply the Lodging House Act to residential housing was unlawful. Until the Court decided the issue, the plaintiffs were not able to advance the causes of action set forth herein. In addition, until May 15, 2013, the plaintiffs were unaware of a nexus between the defendants' actions and resulting harm to the individual plaintiffs and to the limited liability companies which owned the specific properties that were targeted for enforcement by the City of Worcester.

Plaintiffs,


/s/ *Eric Stafford*
By their attorneys,
Eric Stafford (BBO #551074)
Jeffrey Denner Associates, P.C.
4 Longfellow Place, 35th Floor
Boston, MA 02114
(617) 227-2800
atty.ericstafford@gmail.com

## CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 7.1

I, the undersigned, hereby certify that the parties have conferred and narrowed the issues in dispute so that the above motion is filed with Plaintiff's assent.

*/s/ Eric Stafford*
Eric Stafford

## CERTIFICATE OF SERVICE

I, Eric Stafford, hereby certify that on this 6th day of March, 2015, the within Plaintiffs' Opposition to Defendant's Motion to Dismiss and Memorandum of Reasons was served upon Plaintiff through service to via the United States District Court's electronic notification system.

*/s/ Eric Stafford*
Eric Stafford
Counsel for the Plaintiffs