UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
COLLEGE HILL PROPERTIES, LLC,               )
CARO STREET PROPERTIES, LLC,                )
CLAY STREET PROPERTIES, LCC,                )
PAUL F. GIORGIO, individually and           )
DIANA H. GIORGIO, individually,             )
                       Plaintiffs,          )
                                            )   CIVIL ACTION
            v.                              )   NO. 15-40009-TSH
                                            )
THE CITY OF WORCESTER, by and through       )
the DEPARTMENT OF BUILDING AND              )
ZONING; DEPARTMENT OF HEALTH                )
AND HOUSING INSPECTIONS;                    )
DEPARTMENT OF INSPECTIONAL                  )
SERVICES; BOARD OF PUBLIC HEALTH;           )
WORCESTER POLICE DEPARTMENT;                )
City Manager, MICHAEL V. O'BRIEN in his     )
Official and individual capacities; City Councilor )
BARBARA HALLER in her Official and          )
individual capacities; Commissioner of Building )
and Zoning JOHN R. KELLY, in his Official   )
and individual capacities; Director of Housing )
anc Health Inspections AMANDA M. WILSON,    )
in her Official and individual capacities; Code )
Enforcement Officer and Housing and Health  )
Inspector JOHN NORDBERG, in his Official    )
and individual capacities; Code Enforcement )
Officer and Housing and Health Inspector    )
JOHN CARLSON, in his Official and individual )
Capacities; Police Chief GARY GEMME, in his )
Official and individual capacities; Police  )
Lieutenant JAMES SHUGRUE, in his Official   )
and individual capacities,                  )
                       Defendants.          )
_____)

## MEMORANDUM AND ORDER

### September 30, 2015

**HILLMAN, D.J.**

### Background

College Hill Properties, LLC. ("College Hill Properties"), Caro Street Properties, LLC.

("Caro Street Properties"), Clay Street Properties, LLC. ("Clay Street Properties"), Paul F.

Giorgio ("P. Giorgio"), and Diana H. Giorgio (collectively, "Plaintiffs") have filed suit asserting federal and state civil rights claims against: the City of Worcester ("City") by and through its Departments of Building and Zoning, Health and Housing Inspections, and Inspectional Services, the Board of Public Health, and the Worcester Police Department ("WPD"); Michael V. O'Brien (City Manager); Barbara Haller (City Counselor); John R. Kelly (Commissioner of Building and Zoning); Amanda Wilson (Director of Housing and Health Inspections); John Nordberg (Code Enforcement Officer and housing and Health Inspector); John Carlson (Code Enforcement Officer and housing and Health Inspector); Gary Gemme (Chief, WPD); and James Shugrue (Lieutenant, WPD)(collectively, "Defendants")[1]. Specifically, Plaintiffs assert claims under 42 U.S.C. § 1983 for denial of their equal protection rights in violation of the Fifth and/or Fourteenth Amendments (Counts I and III), denial of their substantive due process rights in violation of the Fourteenth Amendment (Count II), and a parallel claim for violation of the Massachusetts Civil Rights Act ("MCRA"), Mass.Gen.L. ch. 12, §§ 11H, 11I (Count IV). This Memorandum and Order addresses Defendants' Motion To Dismiss Plaintiffs' Complaint (Docket No. 8). For the reasons set forth below, that motion is *granted*.

## Standard of Review

To overcome a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667, 129 S. Ct. 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 546, 127 S. Ct. 1955 (2007). The plausibility of a claim is evaluated in a two-step process.

---

[1] As noted, Plaintiffs have asserted claims against the City by and through various agencies, *i.e.,* the Departments of Building and Zoning, Health and Housing Inspections and Inspectional services, the Board of Public Health and the WPD. These agencies are not independent legal entities and any claims asserted as a result of actions by any of them are deemed claims against the City. Therefore, for purposes of this Memorandum of Decision and Order, "Defendants" shall refer to the City and the named individuals.

*Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013). First, the court must separate the complaint's factual allegations, which must be accepted as true, from its conclusory legal allegations, which are not entitled to the presumption of truth. *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013); *Manning*, 725 F.3d at 43. Second, the court must accept the remaining factual allegations as true and decide if, drawing all reasonable inferences in the plaintiff's favor, they are sufficient to show an entitlement to relief. *Manning*, 725 F.3d at 43 The court draws on judicial experience and common sense in evaluating a complaint, but may not disregard factual allegations even if it seems that actual proof of any particular fact is improbable. *Iqbal*, 556 U.S. at 667, 129 S. Ct. 1949; *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955. A motion to dismiss must focus not on whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Mitchell v. Mass. Dep't of Corr.*, 190 F.Supp.2d 204, 208 (D.Mass. 2002) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683 (1974)). To prevail on a statute of limitations defense at the motion to dismiss stage, the facts establishing said defense must: "(1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) must suffice to establish the affirmative defense with certitude." *Gray v. Evercore Restructuring L.L.C.*, 554 F.3d 320, 324 (1st Cir. 2008); *National Ass'n of Government Employees v. Mulligan*, 854 F.Supp.2d 126, 131 (D.Mass. 2012).

### Facts

Beginning in 2002, Caro Street Properties, Clay Street Properties, and College Hill Properties bought residential dwelling units in the City that were leased to students attending the College of the Holy Cross. On or about September 3, 2009, P. Giorgio was served with a cease and desist order by the City's Department of Inspectional Services. That order alleged that a specific unit was in violation of a City zoning ordinance prohibiting renting to more than three unrelated adult occupants (the "Ordinance"), and the lodging house statutory system,

Mass.Gen.L. ch. 140, §§22-32 ("Lodging House Act")[2]. Thereafter, on November 18, 2009, Plaintiffs were served with additional citations from the City for operating unlicensed lodging houses and ordered to cease and desist.

At approximately the same time, Paul and Michele Meaney were served with a cease and desist administrative notice alleging a similar violation of the Ordinance. On November 17, 2009, the City rescinded that order. On January 13, 2010, the City filed civil actions in the Worcester Division of the Housing Court Department ("Housing Court") against the Giorgios and College Hill Properties for violations of the Lodging House Act. The Housing Court permanently enjoined Plaintiffs "from allowing more than three unrelated adults to reside in each dwelling unit." *City of Worcester v. College Hill Properties, LLC*, 2010 WL 4256583 (Mass. Housing Ct. May 12, 2010). When the Plaintiffs failed to comply, the court issued civil contempt orders. The orders were appealed to the Massachusetts Appeals Court, which affirmed the Housing Court. Upon further appellate review, the Supreme Judicial Court ("SJC") ruled that the Lodging House Act has no application in the specific circumstances under which the Plaintiffs were renting the units. *City of Worcester Department of Inspectional Services v. College Hill Properties, LLC.*, 465 Mass. 134 (2013).

## Discussion

Defendants assert that Plaintiffs' Complaint must be dismissed because their claims are time-barred by the applicable statute of limitations. In the alternative, they argue that the claims

---

[2] The statute requires a license for the operation of a "lodging house," which is defined as a "house where lodgings are let to four or more persons not within second degree of kindred from the person conducting it...." Mass.Gen. L. ch. 140, §22. Keepers of an unlicensed lodging house may face fines and a maximum of three months' imprisonment. *Id.*, at §24. The Lodging House Act also requires that licensed lodging houses be subject to inspection by "the licensing authorities and their authorized agents, and by the police on request from the licensing authorities," and a licensed lodging house keeper is subject to criminal penalties if he or she "knowingly permits the property under his control to be used for the purpose of immoral solicitation, immoral bargaining or immoral conduct." *Id.*, at §§25, 26.

4

must be dismissed for failure to state a cause of action. The individual Defendants also assert that that the claims against them must be dismissed on qualified immunity grounds.

*Whether Plaintiffs' Section 1983 Claims Are Barred*

Section 1983 does not contain a built-in statute of limitations. *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). For section 1983 claims, a federal court applies the forum state's limitation period governing personal injury actions. *Id.* Massachusetts has a three-year statute of limitations for personal injury actions. Mass.Gen.L. ch. 260, §2A. "Although section 1983 borrows its limitations period from state law, the accrual date for a section 1983 claim is measured by federal law. Under federal law, such a cause of action accrues 'when the plaintiff knows, or has reason to know of the injury on which the action is based.'" *Alamo-Hornedo v. Puig*, 745 F.3d 578, 581 (1st Cir. 2014)(internal citations and citation to quoted case omitted). "[A] plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt." *Morán Vega v. Cruz Burgos*, 537 F.3d 14, 20 (1st Cir. 2008). Furthermore, for statute of limitation purposes, each section 1983 claim is analyzed independently. *See Nieves*, 241 F.3d at 52-53; *See also Salcedo v. Town of Dudley*, 629 F.Supp. 2d 86, 98 (D. Mass. 2009).

*Regulatory Taking in Violation of the Fifth and Fourteenth Amendments*

In Count I, Plaintiffs allege that Defendants' actions in enforcing the Lodging House Act constituted a regulatory taking without just compensation, in violation of the Fifth and Fourteenth Amendments to the Constitution. In section 1983 cases alleging unlawful taking of property, "the statute of limitations begins to run on the date of the wrongful appropriation." *Vistamar, Inc. v. Fagundo-Fagundo*, 430 F.3d 66, 70 (1st Cir. 2005) (quoting *Altair Corp. v. Pesquera de Busquets*, 769 F.2d 30, 32 (1st Cir. 1985), *abrogated on other grounds by Carreras-*

5

*Rosa v. Alves-Cruz*, 127 F.3d 172, 174 (1st Cir. 1997)). In regulatory takings cases, the accrual date is that date on which a final administrative order is issued and the property at issue is deprived. *Gonzalez-Alvarez v. Rivero-Cubano*, 426 F.3d 422, 426-27 (1st Cir. 2005). The Supreme Court has found that "such claims are ripe when the plaintiff has received a final decision regarding the application of the challenged regulations to the property at issue from the government entity charged with implementing the regulations, and the plaintiff has sought compensation through the procedure provided by the state." *Id.* at 426 (quoting *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997)) (internal quotations omitted). As to whether the final decision is that of the agency or the courts, in a case involving a challenge to a zoning ordinance, the Eleventh Circuit held that a federal regulatory taking claim accrues after "*state judicial authorities … make a final determination on the status of the property.*" *New Port Largo, Inc. v. Monroe Cnty.*, 985 F.2d 1488, 1493 (11th Cir. 1993)(emphasis added). Applying this analysis, the Plaintiffs' regulatory taking cause of action would not have accrued until May 15, 2013, the date that the SJC issued its decision. However, the Ninth Circuit has held that in an as-applied challenge, such as this case, the plaintiff "must have obtained a final decision from the entity charged with implementing the regulation." *Hacienda Valley Mobile Estates v. City of Morgan Hill*, 353 F.3d 651, 657 (9th Cir. 2003). Applying this analysis, the Plaintiffs' regulatory taking claim would be time-barred.

    I need not decide this question, because in order for the Plaintiffs to pursue this claim in this Court, they must satisfy the second prong of the ripeness requirement, that is, they must also establish that they were denied adequate procedures through which they could obtain compensation for the City's alleged taking. "[T]he [City's] action is not 'complete' in the sense of causing a constitutional injury 'unless or until [it] fails to provide an adequate postdeprivation

6

remedy for the property loss.'" *New Port Largo,* 985 F.2d at 1493. Plaintiffs' conclusory statement that they were not provided postdeprivation remedies is insufficient, as a matter of law, to satisfy this second prong—that is, they have failed to allege sufficient facts in their Complaint to establish that their claim is ripe. For that reason, I agree with the Defendants that as to this claim, Plaintiffs have failed to state a cause of action.

*Substantive Due Process Claim*

To determine when Plaintiffs' Fourteenth Amendment substantive due process claim began to accrue, the Court must determine "the actual injury on which the plaintiff rests the cause of action." *Id.* "To establish a substantive due process claim, a plaintiff must demonstrate an 'abuse of government power that shocks the conscience' or 'action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests.'" *Collins v. Nuzzo*, 244 F.3d 246, 250 (1st Cir. 2001). Initially, I will note that Plaintiffs argue that none of their claims accrued until the SJC issued its decision on May 15, 2013. However, as stated above, each section 1983 claim is considered independently for statute of limitations purposes and Plaintiffs' substantive due process and equal protection/selective process claims are distinguishable from the regulatory taking claim for which the Plaintiffs have a well-founded legal argument did not accrue until the SJC's decision issued. More specifically, the factual and legal bases for these other claims would have been the same even if the Supreme Court had found that the City had correctly applied the Lodging House Act to the Plaintiffs. Put another way, the Plaintiffs were aware of the injuries on which their substantive due process and equal protection/selective enforcement claims are based before the SJC's decision issued.

Virtually all of the facts alleged that would support the substantive due process claim occurred well outside of the statute of limitations. To the extent that Plaintiffs are relying on the

7

events which occurred in 2012 and after, *i.e.,* being cited ten times by a city inspector for failing to remove a spool of toilet paper, the WPD filing complaints against one or more Plaintiffs for excessive trash, and making warrantless entries into the premises to determine the number of occupants, such incidents do not rise to the level of a substantive due process violation. *See Amsden v. Moran*, 904 F.2d 748, 754 n.5 (1st Cir. 1990)("though in common parlance the phrase 'arbitrary and capricious' may indicate an absolute lack of rationality not susceptible to adjectives of degree, its legal usages are decidedly otherwise. In the substantive due process context, the requisite arbitrariness and caprice must be stunning, evidencing more than humdrum legal error."). Therefore, this claim is dismissed.

### *Equal Protection Claim*

As stated previously, a claim under section 1983 generally accrues when the plaintiff knows, or has reason to know, of the injury on which the action is based. *Gorelik*, 605 F.3d at 122. Actual knowledge of facts to establish every element of a claim is not required for the statute of limitations to begin running. *Salcedo v. Town of Dudley*, 629 F.Supp.2d 86, 97 (D. Mass. 2009). "Instead, it accrues as soon as a plaintiff possesses 'knowledge of the facts sufficient to put [them] on inquiry notice' of a possible claim." *Id.* at 97-98 (quoting *Marrapese v. Rhode Island*, 749 F.2d 934, 936 (1st Cir. 1984)). The plaintiff does not need to actually know at the time of injury that there are others similarly situated or that the state action was based on an impermissible motive. *Salcedo*, 629 F.Supp.2d at 98; *Sampson v. Town of Salisbury*, 441 F.Supp.2d 271, 276-77 (D.Mass. 2006) (holding that the statute of limitations began tolling at the time of the differential treatment in zoning because the facts necessary to assert their equal protection claim were reasonably knowable at that time). *See e.g. Marrero-Gutierrez*, 491 F.3d at 5-6 (holding that the plaintiff does not need to know of the discriminatory animus at the time of

the injury for the statute of limitations to begin tolling); *See e.g. Hall v. Town of Brighton*, 2014 WL 340106, *3-4 (W.D.N.Y. January 30, 2014) (holding that a cause of action for selective enforcement accrues when an enforcement action has actually taken place).

In *Salcedo*, for example, the plaintiff was arrested after calling the police to report that her husband was being abusive during a domestic violence incident. *Salcedo*, 629 F.Supp.2d at 94. The court found that as of the date of the arrest, the plaintiff knew that she had suffered physical injury and been arrested; that her husband, the aggressor, had not been arrested; that the police rendered assistance to him in seeking a restraining order; and in summation, that the police were treating her husband more favorably than her. *Id.* at 98. As a result, the court held that even though the plaintiff did not know whether any similarly-situated persons existed, she had been "put on notice of the existence of a potential claim." *Id.*

Although not entirely clear in the Complaint, the injury on which Plaintiffs allege their Fourteenth Amendment rights were violated is the selective enforcement of the Ordinance and the Lodging House Act. As to the enforcement of the former, Plaintiffs state that on September 3, 2009, they received cease and desist orders for violating the Ordinance. On September 14, 2009, the Meaneys received cease and desist orders for the same violation. The Plaintiffs assert they were harmed on November 17, 2009, when the City engaged in disparate treatment by rescinding the cease and desist orders that had been issued to the Meaneys, but not the ones that had issued to them. As to this occurrence, the Plaintiffs' claim is clearly time-barred. The City filed civil actions against the Plaintiffs for violations of the Lodging House Act on January 13, 2010. Plaintiffs allege that others similarly situated received cease and desist orders for violations of the act, but no further enforcement actions were taken against them. At the very latest, the Plaintiffs were aware the facts necessary to support this claim at the time that the City

brought an enforcement action against them (January 13, 2010). For these reasons, this claim is time-barred.

*Continuing Violation and Discovery Rule*

Plaintiffs argue that notwithstanding when they were put on notice of the potential claims, under the continuing violation doctrine, their claims are timely. The continuing violation doctrine allows a plaintiff to recover for injuries that occurred outside the statute of limitations under certain narrow conditions. *Perez-Sanchez v. Public Building* Authority 531 F.3d 104, 107 (1st Cir. 2008). In essence, it is mis-named and "allow[s] a suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought." *Id.* (quoting *Morales-Tañon v. Puerto Rico Elec. Power Authority*, 524 F.3d 15, 18 (1st Cir. 2008)). However, there must be "some violation within the statute of limitations period that anchors the earlier claims." *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001).

Plaintiffs assert that the continued wrongs occurred until 2012, specifically referencing the conduct of a city inspector in inspecting and citing the Plaintiffs on ten separate occasions, the last of which occurred on December 4, 2012. Complaint, at ¶59. There are, however, no allegations to support a conclusion that these inspections and citations provide a basis for any of Plaintiffs' claims. Likewise, as discussed above, other incidents cited by Plaintiffs during the statute of limitations period, such as complaints filed by the WPD for trash and warrantless entries into the properties to determine occupancy, do not on their face rise to the level of a constitutional violation under the Fifth and/or Fourteenth Amendments and therefore, cannot serve to link the events that occurred outside the statute of limitations period. Accordingly, the continuing violation doctrine does not apply in this case.

Finally, Plaintiffs also argue a variant of the discovery rule exception to the statute of limitations. Plaintiffs contend that the cause of action did not accrue until the SJC ruling on May 15, 2013, because they were unaware of any wrong occurring prior to that date. Under the discovery rule, the statute of limitations is tolled until the person, "(1) knows or has sufficient notice that s/he was harmed; and (2) knows or has sufficient notice of the cause of harm." *Lareau v. Page*, 39 F.3d 384, 388 (1st Cir. 1994). For the statute of limitations to be tolled pursuant to the discovery rule, "the factual basis for the cause of action must have been 'inherently unknowable' at the time of the injury." *Geo. Knight & Co., Inc. v. Watson Wyatt & Co.*, 170 F.3d 210, 213 (1st Cir. 1999). The factual basis is unknowable if it cannot be detected by reasonable diligence. *Id.* As such, the factual inquiry needs to focus on "the first event reasonably likely to put the plaintiff on notice that the defendant's conduct had caused him injury." *Szymanski v. Boston Mut. Life Ins. Co.*, 56 Mass. App. Ct. 367, 371 (2002). I do not find that Plaintiffs have alleged sufficient facts to establish that their claims were inherently unknowable and therefore, the discovery rule does not apply.

*Whether Plaintiffs' MCRA Claim Is Barred*

The MCRA also contains a three-year statute of limitations. Mass. Gen. L. ch. 260, §5B. Defendants have applied the same analysis in arguing that Plaintiffs' MCRA claim is time-barred as they applied to Plaintiffs' section 1983 claims. However, while determining when the section 1983 claims accrue is determined under federal law, accrual for purposes of a claim under the MCRA is determined by state law. "The MCRA statute of limitation begins running once a plaintiff knows or has reason to know of the alleged wrongful acts. A plaintiff need not know the extent or severity of the harm suffered. To start the limitations period a plaintiff need only have knowledge of all the facts necessary to make out his or her civil rights claim. The limitations

period begins on the date of the wrongful act, "unless the wrong is 'inherently unknowable.' When the alleged injury is "inherently unknowable," the applicable statute of limitations may be tolled under the discovery rule." *Sampson v. Town of Salisbury*, 441 F.Supp.2d at 275-76 (internal citations, citation to quoted cases and footnotes omitted). Neither party has argued that the determination of when a cause of action accrues under the state law standard leads to a different outcome than under federal law. Therefore, I find that the MCRA claim is also time-barred, except as to the regulatory taking claim, which I find is not ripe for adjudication.

## Conclusion

Defendants' Motion to Dismiss the Complaint (Docket No. 8) is ***granted***.

/s/*Timothy S. Hillman*
TIMOTHY S. HILLMAN
DISTRICT JUDGE